KEANE & MARLOWE, LLP
Attorneys for Defendants
REPINTER INTERNATIONAL SHIPPING CO. S.A.
 and MIACHART CORPORATION LLC
197 Route 18 South - Suite 3000
East Brunswick, New Jersey 08816
(732) 951-8300
Mary Ann C. Marlowe (MM-0723)
Christopher P.  Keane (CPK-4394)


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DEVAL DENIZCILIK VE TICARET A.S.,

                        Plaintiff,                                          **07 Civil 3397 (JGK)**

-against-                                                                   **ECF CASE**

REPINTER INTERNATIONAL SHIPPING
CO. S.A.  and MIACHART CORPORATION
LLC.,

                        Defendants.
------------------------------------------------------------x

### DEFENDANTS'/COUNTERCLAIMANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR VACATUR OF RULE B ATTACHMENT AND SECURITY ON COUNTERCLAIM


### FACTS

        The pertinent facts concerning Defendants' efforts to tender substitute security to release

the funds now attached pursuant to this Court's April 30, 2007 Order are set out in the May 24,

2007 Declaration of Defendants'/Counterclaimants' attorney, Mary Ann C. Marlowe ("Marlowe

Decl."), to which the Verified Complaint and Verified Answer and Counterclaims are annexed as

Exhibits 3 and 5, respectively.

This admiralty action was commenced by the Plaintiff, DEVAL DENIZCILIK VE TICARET AS., ("Deval") to obtain process of maritime attachment and garnishment ("PMAG") under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.  Deval obtained an order for the issuance of PMAG against the assets of Defendants/Counterclaimants, REPINTER INTERNATIONAL SHIPPING CO. S.A. and MIACHART CORPORATION LLC., ("Repinter-Miachart") in the amount of USD1,187,769.26, including estimated future interest, attorneys' fees, and arbitrators' fees.[1]  To date, USD434,425.87 has been restrained.[2]

Deval's claims and the counterclaims of Repinter-Miachart arise out of a series of three charter parties entered into for the charter of the M.V. ORHAN DEVAL.  All three charter parties call for London arbitration with English law to apply.[3]

Under the first charter, Deval was the "head owner" and Repinter-Miachart were the charterers. Repinter-Miachart has counterclaimed for USD1,500,326.00 for damages arising under the same charter parties, including interest at the same rate and period as in Deval's complaint and the same estimates for lawyers' fees and arbitrators' fees.[4]

Repinter-Miachart have tendered a Letter of Undertaking ("LOU") issued by The Charters P&I Club for the full amount of Deval's alleged claims which, to date, Deval has refused to accept in return for the prompt release of the attached funds and vacatur of the Rule B attachment.[5]

---

[1] See copy of April 30, 2007 Order attached to the Marlowe Decl. as Exhibit 1.
[2] See paragraphs 24-25 of the Verified Answer and Counterclaims.
[3] See paragraphs 30-37 of the Verified Answer and Counterclaims.
[4] See paragraphs 19-22 of the Verified Answer and Counterclaims.
[5] See paragraphs 27-29 of the Verified Answer and Counterclaims.

Additionally, Deval has repeatedly and unreasonably refused to voluntarily provide counter security for Repinter-Miachart's counterclaims in an obvious attempt to gain a tactical advantage over Repinter-Miachart in the upcoming London arbitration.[6]

The matter is now before the Court on Repinter-Miachart's Supplemental Rule E(4)(F) and Rule E(7) motion for the vacatur of the Rule B attachment, the release of the funds presently restrained on the basis of the substitute security tendered and for counter-security on their counterclaims. Repinter – Miachart seek an Order directing Deval, in part, to provide counter security in the amount of USD1,500,326.00.

---

[6] <u>See</u> paragraphs 6-8 of the Marlowe Decl.

**POINT I**

**DEFENDANTS' ATTACHED FUNDS SHOULD BE RELEASED AND THE
RULE B ATTACHMENT VACATED BASED UPON THE MORE THAN
ADEQUATE SUBSTITUTE SECURITY TENDERED BY DEFENDANTS.**

Supplemental Rule E(4)(f) provides in pertinent part:

> *Procedure for Release From Arrest or Attachment.* Whenever
> property is arrested or attached, any person claiming an interest in
> it shall be entitled to a prompt hearing at which the plaintiff shall
> be required to show why the arrest or attachment should not be
> vacated or other relief granted consistent with these rules.

As noted in the Defendants' Verified Answer and Counterclaim at paragraphs 27-29 of

the Marlowe Declaration, Defendants' have tendered a letter of undertaking issued by Michael

Else and Company Limited, agents for the Charterers' P&I Club, on behalf of Defendants in the

amount of US$1,187,769.26 reflecting the full amount of Plaintiff's alleged claims in exchange

for the prompt release of the attached funds and vacatur of the April 30, 2007 Order of

Attachment.  Defendants' perfectly satisfactory tender has been repeatedly and unreasonably

rejected by Plaintiff.

The sufficiency of the security tendered by Charterers is indisputable.  The Charterers

P&I Club is underwritten by the C.R.O. Farrell Syndicate, which, in turn, is managed at Lloyd's

by Limit Underwriting Limited. Limit Underwriting Limited is part of QBE Insurance Group,

one of the largest managing agents operating within the Lloyd's insurance market.  Lloyd's of

London presently has a S&P security rating of A+.  QBE itself is also rated A+ by S&P.

For the past two weeks, Plaintiff has wrongfully refused to accept Defendants' tender of

substitute security, knowing full well that letters of undertaking issued by the underwriting

agents for Defendants' P&I Club have historically and consistently been deemed acceptable security by both other Plaintiffs and this Court.[7]

Initially, Owners herein conditioned their acceptance of Defendants' tendered security upon a further guaranty from the syndicate which underwrites the insurance for Michael Else & Co. Defendants viewed such duplicative security as totally unnecessary and therefore, refused to issue such a "re-guarantee."

Most recently, just prior to the filing of the instant motion, Plaintiff unreasonably conditioned its acceptance of Defendants' letter of undertaking upon Defendants' agreement to forever forgo seeking counter-security in this matter.[8]  In light of the well established sufficiency of Defendants' tendered security, Plaintiffs proposed contingency was and is totally unacceptable.

Given all of the above, Defendants' attached funds should be released and the Rule B attachment vacated.

---

[7] In Lavena Shipping v. Brampton Shipping 05 CIV. 6263 (JSR) the Honorable Judge S. Rakoff directed the vacatur of the attachment therein over the same objection to the same form of Charterers Club LOU as has been registered in the instant case.

## POINT II

### DEFENDANTS ARE ENTITLED TO COUNTERSECURITY IN THE AMOUNT OF USD1,500,326.00 FOR THEIR COUNTERCLAIMS

Supplemental Rule E(7)(a) of the Federal Rules of Civil Procedure provides:

> (a) When a person who has given security for damages in the original action asserts a counter claim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given <u>must</u> give security for damages demanded in the counterclaim, unless the court for cause shown, directs otherwise.  Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise. (Emphasis added.)

It is axiomatic that claims and counterclaims between vessel owners and charterers arising out of a vessel charter are considered "arising out of the same transaction" for purposes of Supplemental Rule E(7).  <u>Verton Navigation, Inc. v. Caribica Shipping Ltd.</u>, no. 90 Civ. 6940; 1991 U.S. Dist. LEXIS 6722, *2-*3 (S.D.N.Y. May 1, 1991); <u>Transportes Caribe, S.S. v. M/V Feder Trader</u>, 860 F.2d 637, 638 (5th Cir. 1988). The claims and counterclaims of the present dispute all arise out of the three charter parties entered into between Deval, Repinter-Miachart and the two subsequent sub charterers of the Vessel.[9]

Deval has the authority to attach assets belonging to Repinter-Miachart up to USD1,187,769.26. To date, Deval has obtained security to the extent of USD434,425.87 restrained pursuant to its PMAG.  Accordingly, Plaintiff for whose benefit Defendants' assets have been attached as security, must give security in <u>at least</u> the same amount as the security to which Plaintiff may lay claim.  Failing such, the goal of Supplemental Rule E (7), to place the parties on equal footing as regards security and thereby afford reciprocal protection, will not be

---

[8] <u>See</u> paragraph 8 of the Marlowe Decl., <u>see also</u> paragraphs 27-29 of the Verified Answer and Counterclaims
[9] Copy of April 13, 2006 charter party entered into between Deval and Repinter-Miachart is attached to the May 23, 2007 Declaration of Mary Ann C. Marlowe ("Marlowe Decl.") as Exhibit 4.

realized.  <u>Result Shipping Co., Ltd. v. Ferruzzi Trading USA, Inc.</u>, 56 F 3d. 394, 399-400 (2d

Cir. 1995); <u>Doungbu Express Co., Ltd. v. Navios Corporation</u>, 944 F. Supp. 235, 239 (S.D.N.Y.

1996); <u>Verton</u>, <u>supra</u>; <u>Titan Nav., Inc. v. Timsco, Inc.</u>, 808 F. 2d 400, 403 (5th Cir. 1987); <u>Expert

Diesel, Inc. v. Yacht Fishin Fool</u>, 627 F.Supp 432, 433 (S.D.Fla. 1986); <u>Eastern Transp. Co. v.

U.S.</u>, 98 F.Supp. 36, 38 (S.D.N.Y. 1951).

Although some courts have held that the amount of security imposed on counterclaims

should not exceed the amount provided by the original defendant, Defendants submit  that this

mechanical formula is not mandated by the discretionary language contained in Supplemental

Rule E(7) and, furthermore, not well reasoned.  Rather, Defendants/Counterclaimants strongly

favor the approach advanced in the second edition of Moore's Federal Practice:

> A holding [precluding imposition of a larger bond on the
> counterclaim than that which was required of the original
> defendant]…would serve only to encourage sham suits and races
> to the court house.  Suppose, by way of illustration two vessels
> collide and one suffers only minor damage and the other sustains
> very severe damage.  If the owner of the slightly damaged vessel
> commences an action in rem against the severely damaged vessel a
> relatively small bond will be required by the owner of the severely
> damaged vessel. If the owner of the latter vessel is compelled to
> assert his much larger claim in the same action, it might be grossly
> unfair to limit the security for his claim to the amount of the bond
> he had to provide, since had he first commenced his action he
> could have compelled the posting of a bond large enough to
> compensate for the severe damages he alleges.  In such a case, it
> might well be "just and reasonable" and more in keeping with the
> purposes of the rule providing for security on counterclaims to
> require that the original plaintiff post a larger  bond to protect
> against the counterclaim than the original defendant had to post to
> protect against the original action.  If courts are not alert to such
> facts, it might encourage the filing of sham suits by parties who
> know they are potential targets for large in rem actions.  Similarly,
> a flat rule providing that security on counterclaims cannot exceed
> the amount of the original defendant's bond would encourage races
> to the courthouse by the least injured of the parties sustaining
> damages in a maritime occurrence.

7A J. Moore & A. Pelaez, Moore's Federal Practice § (E.15) at E-737 (2d Ed. 1988).

This Court, in fact, permitted greater security on a counterclaim than a plaintiff obtained on its main claim in <u>Verton</u>, <u>supra</u>.  In that case, defendant Caribica sought and was granted security via a Rule E (7) motion for its counterclaim in the amount of USD338,850.11 representing charter hire withheld by plaintiff and reimbursement of expenses.  The plaintiff had obtained a writ of attachment which was vacated by agreement after insurance proceeds belonging to the defendant in the amount of USD195,423.11 were paid into an escrow account held by the plaintiff's counsel.  This Court rejected the plaintiff's argument therein that defendant's counterclaim was fully secured by a performance guarantee by a third party under the subject charter party.

Similarly, in <u>Continental Shipping Ltd v. Telfair Int'l Corp.</u>, 1990 U.S. Dist. LEXIS 11549 (S.D.N.Y. 1990), Judge Mukasy rejected the Plaintiff's argument that the Defendant had not shown the necessity for counter-security and acknowledged that the underlying purpose of Rule E (7) is to "put the parties on equal footing."  In exercising his discretion under Rule E (7), he found it unnecessary to determine whether Defendant "genuinely and justifiably suffers such insecurity that Plaintiff should be required to provide insurance… the purpose is to force litigants to put their money where there mouth is so to speak."

In <u>Spriggs v. Hoffstot</u>, 240 F.2d 76 (4th Cir. 1957), a counterclaimant sought security in an amount equal to the amount of security it had posted despite the fact that its counterclaims amounted to far less.  The Court, recognizing the original purpose of permitting security on counterclaims was to place the parties on an equal basis as regards security, thought literal application of Rule 50 (the former admiralty rule prior to unification) inappropriate.  As stated by that Court:

> When the rule gives the cross-libellant a right to 'security in the usual amount,' his bond need not necessarily be in the exact amount of the original libellant's bond; nor is it necessarily in the amount of the cross-claim, because as in the original libellant's case…so in the cross-libellant's case the amount is subject to the exercise of the judge's discretion.

Id. at 79.  Thus, the Fourth Circuit concluded that in exercising the discretion built into the rule, the trial judge need not be governed by the amount of bond given by the original defendant nor even by the size of the counterclaim, and is free to set the bond in an amount that is "just and reasonable under all the circumstances." Id. At 80.

Here, had Defendants/Counterclaimants brought their action first and attached Plaintiff's assets, they would have been entitled to attach an amount equal to their claim, i.e., USD1,500,326.00.  The fact that their claims are fortuitously counterclaims should not limit this right.

## POINT III

### IF PLAINTIFF DOES NOT PROVIDE COUNTER-SECURITY FOR DEFENDANTS' COUNTERCLAIMS, DEFENDANTS SHOULD BE ENTITLED TO WITHDRAW/VOID THE SUBSTITUTE SECURITY TENDERED AND ESTOPP PLAINTIFF FROM ANY FURTHER ATTACHMENT OF DEFENDANTS' ASSETS

Rule E(7)(a) essentially provides that the Plaintiff's claim must be stayed until countersecurity is given, unless the Court orders otherwise. However, in the present case, the action is to be stayed in any event pending arbitration in London.[10]  Therefore, merely staying the proceedings would not be a remedy if Plaintiff fails to provide security.

It is firmly established that the purpose of Rule E(7) is to place the parties on an equal footing.  See Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co., 263 U.S. 629, 638-39 (1924.) See also Finecom Shipping Ltd. v. Multi Trade Enterprises AG., 2005 U.S. Dist. Lexis 25761; 2005 AMC 2952 (S.D.N.Y. 2005).  Clearly, when one party posts security and the other fails to comply with a court order to do the same, that policy is violated.

This Court has not been reticent to exercise its authority to vacate a plaintiff's attachment if the plaintiff fails to comply with an order requiring it to provide security for a defendant's counterclaim.  See Verton Navigation, Inc. v. Caribica Shipping Ltd., no. 90 Civ. 6940, (JFK), 1992 U.S. District LEXIS 6722, *4-*5  (S.D.N.Y. January 21, 1992).

In Seaboard & Caribbean Transport Corp. v. Hafen-Dampfschiffahrt A.G. Hapaghadac Seebaderdienst, 329 F.2d 538, 540 (5th Cir. 1964), a ship owner posted security in order to release its vessel which had been arrested by Charterer.  The owner thereafter sought counter-

---

[10] Rule E(7)(a) expressly provides as follows: When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise.  Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise.

security.  The Fifth Circuit held that it was within the trial court's broad discretion to release

owner's security since charterer was financially unable to post counter-security. Id. at 541.

In Titan Navigation, Inc. v. Timsco, Inc., 808 F.2d 400 (5th Cir. 1987), the Fifth Circuit

again released security when a party claiming financial inability failed to post counter-security.

According to the Court:

> [T]he exercise of the trial court's discretion to order
> countersecurity is to be guided by the essential and equitable
> purposes of the Rule.  In doing so, the Court must weight the
> importance of the security interests giving rise to the initial seizure,
> against the potential injustice of requiring the defendant-
> counterclaimant to post security without affording reciprocal
> protection.  We believe the guidon for this analysis is the Court's
> obligation to preserve the integrity of maritime liens . . . We can
> readily contemplate instances when permitting one party to enjoy
> security without requiring counter-security could result in injustice.
> For example, when no maritime lien or statutory right is involved,
> as in an action commenced quasi in rem under Rule B, there
> usually would be little or no reason to permit a complainant to
> enjoy unilateral security rights, absent strong justification – or in
> the terms of Rule E(7), "cause." (Emphasis added.)

808 F.2d 404-405.

In the present case, as discussed supra, the substitute security tendered by Defendants is

completely adequate to release the funds attached to date and further, to, vacate this Court's Rule

B Attachment Order dated April 30, 2007.  Plaintiff's adamant refusal to accept the LOU

tendered by Defendants in the full amount of Plaintiff's alleged claims is totally groundless for

the reasons set forth above and in the Marlowe Declaration.  It is universally acknowledged that

security in this form is routinely accepted as security for the release of attached funds by Owners

and Charterers alike.

Assuming for the moment that this Court agrees that

Defendants/Counterclaimants' tender of security is sufficient to release the funds now restrained

and vacate this Court's April 30, 2007 Order of Attachment, Defendants respectfully request that Plaintiff be directed by this Court to post a comparable letter of undertaking issued by Owners' Protection and Indemnity Club or a bank guarantee from a first class London or New York bank which is acceptable to Defendants in the full amount of Charterers' counterclaims within seven (7) calendar days of the date of any such Order by this Court.

In the event that Owners are unwilling or unable to comply, then Defendants' respectfully request, in the alternative, that this Court enter an Order which will enable the Defendants' to void The Charterers' Club LOU and serve to release the attached funds and vacate this Court's April 30, 2007 Attachment Order . Defendants further request, in light of their good faith tender of full security for Plaintiff's alleged claims that, in this event, Owners be estopped from seeking subsequent Rule B attachments of Defendants' assets in so far as the instant matter is concerned.

To permit Plaintiff to require additional security from Defendants pursuant to the present attachment order in light of the indisputable sufficiency of the LOU tendered and without compelling Plaintiff to post counter-security, would not only bring about a further injustice, but would undermine the very purpose of Rule E (7).

## CONCLUSION

For all the foregoing reasons, and those set forth in the May 24, 2007 Declaration of Mary Ann C. Marlowe, Esq. filed herewith, the funds of Defendants now restrained should be released, the present Rule B attachment now in place pursuant to this Court's April 30, 2007 Order should be vacated, Plaintiff should be ordered to provide counter security for the full extent of Defendants' counterclaims and, should Plaintiff fail to comply with this Court's directive within seven (7) calendar days of the date of the order, Defendants should be permitted to void The Charterers' Club LOU tendered to Plaintiff.   Finally, in this event, Owners should be estopped from seeking subsequent Rule B attachments of Defendants' assets insofar as they are sought for security in connection with the instant matter.

Dated:  New York, New York
   May 24, 2007

          KEANE & MARLOWE
          Attorneys for Defendants
          Repinter International Shipping Co. S.A.
          and Miachart Corporation LLC


          s/_____
          Mary Ann C. Marlowe (MM 0723)
          Christopher P. Keane (CK 4394)
          A Member of the Firm
          197 Route 18 South, Suite 3000
          East Brunswick, New Jersey 08816
          (732) 951-8300

          300 Park Avenue – 17th Fl
          New York, New York 10022

TO:  Freehill, Hogan & Mahar, LLP
   Attorneys for Plaintiff
   Deval Shipping & Trading Co.
   80 Pine Street
   New York, New York 10005

Attn: Michael Unger, Esq. (MU 0045)
   Lawrence Kahn, Esq (LK 5215)