229-07/MEU/LJK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DEVAL DENIZCILIK VE TICARET A.S.,

                **07 CIV 3397 (JGK)**

             Plaintiff,

     -against-

REPINTER INTERNATIONAL SHIPPING
CO. S.A. and MIACHART CORPORATION
LLC,

             Defendants.

-----------------------------------------------------------x


## PLAINTIFF'S RESPONSE MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION FOR VACATUR


                       Freehill Hogan & Mahar, LLP
                       Attorneys for Plaintiff
                       Deval Denizcilik ve Ticaret A.S.
                       80 Pine Street
                       New York, NY  10005
                       (212) 425-1900
                       (212) 425-1901 fax


Of Counsel:
Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of Plaintiff Deval Denizcilik ve Ticaret A.S. ("Deval") in opposition to the motion by Defendants Repinter International Shipping Co. S.A. ("Repinter") and Miachart Corp. LLC ("Miachart") to vacate the attachment obtained in this matter. For the reasons set forth below and in the accompanying Arghyrakis Declaration, Defendant's motion should be denied.

## BACKGROUND FACTS

The background facts are relatively straightforward and are not in dispute. Plaintiff Deval is the owner of the M/V ORHAN DEVAL, and chartered the ship to Defendant Repinter. Miachart guaranteed the performance of the charter by Repinter.[1] Deval alleges that Repinter breached the charter and Deval brought the instant action against Repinter and Miachart in order to obtain security for its claims which are pending in London arbitration. This Court authorized the restraint of Defendants' property pursuant to Rule B, and to date Deval has succeeded in restraining approximately $435,000 of Defendants' property.

On or about May 10, 2007, Defendants offered to Deval a Letter of Undertaking ("LOU") to act as substitute security for Deval's claims and to cause the release of the funds being restrained. The LOU was given on behalf of "the Charterers P&I Club", but investigations by Deval determined that "the Charterers P&I Club" was not a valid legal entity and so the proposed LOU was rejected.[2]

---

[1] There is some indication that Miachart denied or is denying its status as guarantor of the performance of the charter by Repinter in the London arbitration, but Defendants' application herein appears to contradict this position taken in London. Miachart's status as guarantor *vel non*, however, is not relevant for the purposes of this application.

[2] The "Affidavit of Myles A. Sunley", relied upon by Defendants for various factual assertions concerning the nature and content of their LOU and those behind it, is not submitted in admissible form under 28 U.S.C. §1746 or otherwise and should therefore be rejected by the Court.

Over the next several weeks, Defendants made changes to the LOU, including re-stating the LOU so that it was on behalf of "CR O'Farrell Syndicate 1036". This entity, however, is no longer a Lloyd's of London syndicate in its own right. The only member of Syndicate 1036 is a company called QBE Corporate Ltd. ("QBECL"), which has a called up, allotted and fully paid share capital of only £2 (less than $5), lost value over the last reported financial year, and has total liabilities that exceed total assets. The corporate relationships between Syndicate 1036 and the QBE entities are highly complex. It appears from Deval's investigation that Syndicate 1036 is no longer writing policies and is merely resolving issues related to policies issued in prior years. There are some 89 company charges (similar to registered liens and judgments) against QBECL, in indeterminate amounts, all of which would be superior to a claim by Deval for payment on an arbitral award to be rendered in Deval's favor.

Deval is not unwilling to take substitute security in lieu of the cash that has been restrained, but it has repeated that it needs assurances that it will be able to collect on the substitute security offered. Defendants have refused to provide substitute security in the form of a bond or from a plainly solvent company such as QBECL's parent company. With respect to the offered LOU, Deval has repeatedly asked for answers to three reasonable and basic questions about the proffered substitute security: (1) what is the legal entity offering the LOU; (2) how can Deval collect under the LOU on a successful arbitral award; and (3) what reasonable assurances will Deval have that the entity providing the LOU will have the assets needed to make payment. Deval has never been able to get clear answers to all three of these questions, and so has been unwilling to accept the LOU offered by Defendants.

Insofar as counter-security for Defendants' counterclaims is concerned, the Court has bifurcated this issue upon agreement of the parties. This issue will be briefed and argued separately at a later time in compliance with the briefing schedule already established by the Court.

## ARGUMENT

### PLAINTIFF SHOULD NOT BE COMPELLED TO ACCEPT DEFENDANTS' PROFFERED LOU

The *Advisory Committee Notes* to the 1985 Amendments to Rule E explain that "Rule E(4)(f) is designed to...[guarantee] a prompt post-seizure hearing at which [the defendant] can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings". Here, it is plain that Defendants' motion to vacate the attachment does not attack the complaint, the arrest, the security demanded or any other alleged deficiency in the proceedings. Instead, Defendants seek to have the Court impose their proffered substitute security (an LOU) on Plaintiff. In so moving, Defendants purport to rely on Rule E(5).

Rule E(5) indicates that the Court has the power to impose on a plaintiff acceptance of a bond as substitute security for restrained property, but here, Defendants are not offering a bond. Alternatively, in the event that the parties cannot agree *as to an amount*, the Court is empowered to "fix the principal sum" of either a bond or of the stipulation. Once again, however, no bond is being offered by the Defendants, and the parties have been unable to stipulate as to a form of substitute security. Accordingly, Defendants' reliance on Rule E(5) is misplaced.

The Court is not empowered to require a plaintiff to accept security in a form other than a bond, and courts have been reluctant to impose alternative forms of security

upon plaintiffs. *See generally* <u>Thyssen, Inc. v. M/V SENA DENIZ</u>, 2000 U.S. Dist. LEXIS 17511 (E.D.LA. Nov. 30, 2000) (Clement, then D.J. now A.J. (5th Cir.)). The reason for such reluctance is plain – unless the substitute security is offered in the form of a bond, Courts are simply not in a position to know whether the proffered substitute security is valid and collectible.[3]

Here, Plaintiff Deval has raised substantial concerns regarding whether it will in fact be able to collect on the LOU after receiving a favorable arbitral award, and Defendants have done little to encourage Deval to willingly accept their proffered LOU.[4] The Defendants' reliance on, *inter alia*, the three levels of security offered by Lloyd's referred to in Defendants' moving papers is also misplaced – the security of Lloyd's is only with respect to Lloyd's Syndicates (Syndicate 1036, which offers Defendants' LOU, is no longer a Lloyd's Syndicate), and only applies to insured risks, which the payment of an LOU is not. Accordingly, the "three levels of security offered by Lloyd's" is simply not available to secure Defendants' proffered LOU. Defendants' reliance on ratings by Standard & Poor's is entirely misplaced – the ratings provided for Lloyd's of London and for QBE (the parent of QBECL, the member of Syndicate 1036) are inapplicable and in any event relate solely to underwriting – not to activities outside that realm, such as the issuance of LOU's. Further, Defendants' argument that "LOU's offered by underwriting agents for Defendants' P&I Clubs have historically and consistently been deemed

---

[3] The Court should not involve itself in evidentiary hearings to determine whether proffered substitute security is valid and enforceable. If the substitute security is not plainly valid and enforceable to the satisfaction of the party being asked to accept it, and if that party can enunciate some reason why it is reluctant to accept the substitute, then the security should be deemed unacceptable.

[4] Defendants, for their part, are unwilling to offer either a bond or a guaranty from QBECL's corporate parent, which is plainly solvent.

acceptable security" (Defendants' brief at 4-5) is inapposite. The subject LOU offered by the Defendants is not such an LOU.

Generally, to sustain an attachment under Admiralty Rule B in the face of a challenge under Rule E(4)(f), a maritime plaintiff must show that "1) it has a valid *prima facie* claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006).

Here, Defendants do not challenge Plaintiff Deval on any of these bases and accordingly it must be accepted that Plaintiff does have a *prima facie* maritime claim against the defendant, that the defendant cannot be found within the district, that the defendant's property is found within the district and that there is no bar to the attachment. It would appear, therefore, that there are simply no grounds for vacating the attachment.

It appears instead that Defendants' application to vacate the attachment is the result of the Defendants' frustration at being unable to negotiate substitute security with Plaintiff.[5] Defendants' frustration is evident from their moving papers, which recite some of the history of the negotiations for no apparent purpose but to attempt to tar Plaintiff (Defendants' brief at 4-5). It is respectfully submitted that Rule E(4)(f), the purpose of which is to provide a defendant with an opportunity to vacate an attachment on the basis that the attachment was somehow improper or deficient, was not designed to be a vehicle by which a defendant, dissatisfied with the progress it was making (or not making) in negotiating substitute security, could force substitute security (in a form other than a

---

[5] Plaintiff is equally frustrated in dealing with Defendants, due in large part to the fact that each time Plaintiff sought assurances that Defendants' LOU was adequately backed by a solvent entity, Plaintiff was given information that proved to be not quite accurate.

bond) upon a plaintiff. In seeking to require Plaintiff Deval to accept the proffered LOU in lieu of the cash security obtained pursuant to Rule B and this Court's Order, Defendants are improperly attempting to enlist the Court to its side in the negotiations regarding the *form* the security is to take, a role which is plainly not authorized by Rule E(5), and which this Court should reject out-of-hand.

### CONCLUSION

For all the foregoing reasons, the Defendants' motion to vacate the attachment and to require Plaintiff to accept the proffered LOU should be denied in its entirety and the Court should reserve judgment on the counter-security issue until such time as the briefing on this aspect of Defendants' application is completed pursuant to the previously established schedule.

Dated: New York, New York
June 18, 2007

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
Deval Denizcilik ve Ticaret A.S.

By:
Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax