KEANE & MARLOWE, LLP
Attorneys for Defendants
REPINTER INTERNATIONAL SHIPPING
CO. S.A. and MIACHART CORPORATION LLC
197 Route 18 South Suite 3000
East Brunswick, New Jersey 08816
(732) 951-8300
Mary Ann C. Marlowe (MM-0723)
Christopher P. Keane (CPK-4394)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DEVAL DENIZCILIK VE TICARET A.S.,

               Plaintiff,

-against-

REPINTER INTERNATIONAL SHIPPING
CO. S.A. and MIACHART CORPORATION
LLC.,

               Defendants.
-----------------------------------------------------------x

**REPLY AFFIDAVIT OF ANDREW GOODYEAR**

07 Civil 3397 (JGK)

ECF CASE

ANDREW GOODYEAR, being duly sworn, deposes and says:

1    I am a senior Claims Executive employed by Michael Else & Company Limited at 65 Leadenhall Street, London EC3A 2AD.

2    Michael Else & Company are the managers of the Charterers' liability cover provided under the name of the Charterers P&I Club and act as underwriting agents for syndicate 1036. I have been involved in the field of Charterers' liability insurance since joining Michael Else & Co in April 1991 and have been working in the shipping industry since 1968.

3    I am duly authorised by Michael Else & Company to make this affidavit in support of the application brought by our assureds, Repinter International Shipping Co S.A. and

Miachart Corporation LLC the Defendants/Charterers in the above captioned action to have the attachment released against a letter of undertaking put up by Syndicate 1036.

4  I make this affidavit based on the facts and matters within my own personal knowledge and upon information provided to me by the Defendants' English and United States counsel, namely Reed Smith Richards Butler LLP and Keane & Marlowe, LLP respectively, and in reply to some of the statements made in the 18 June 2007 declaration of Epaminondas G. Arghyrakis.

5  I believe that it is important to draw the Court's attention to the role which Charterers' liability cover plays in facilitating international trade.

6  Before entering into a charterparty, a charterer will want to know that the shipowner is fully covered with appropriate P&I insurance which will respond in the event that there are claims for cargo damage and/or other losses which arise out of the negligent operation of the vessel by the owner.

7  Similarly, one of the concerns of any shipowner contemplating entering into a charterparty is the ability of his intended charterer to respond to liabilities if these are incurred due to the charterer's breach of contract.

8  In this case, the Owners did make such an enquiry and were told that the Charterers were entered with the Charterers P&I Club. This was recorded as a formal term of the Charterparty – in clause 38 [Exhibit 1].[1]

9  The charterers' liabilities insured include, in broad terms:
   (a)  Loss of or damage to the vessel;
   (b)  Loss of or damage to cargo;
   (c)  oil pollution;

---

[1] The reference to "Charterers' Mutual Assurance Assn" is a broker error. As explained in paragraph 23 of Mr Sunley's first affidavit, the Club was demutualised in 1999 and has been run ever since as a fixed premium insurance.

    (d)    loss of or damage to third party property;

    (e)    death and/or personal injury.

10    We currently have over 130 policy holders, ranging from large state-owned grain trading companies and publicly listed commodities houses to small-scale operators who may only charter a few ships in any given year.

11    The advantage that an owner has when he contracts with a member of the Charterers' Club is that no matter how large or small the entity with whom he is contracting, the same level of liability cover is available, independently of any resources which may be available to the charterer concerned.

12    The owner therefore has the assurance that if a liability arises for which the charterers are responsible to indemnify him, there is insurance cover in place which will respond.

13    One of the key benefits of such cover is also the ability of owners to obtain security for claims as and when they arise, pending their later determination in arbitration or before the relevant court.

14    Typically charterers' liability cover comes from three sources:

    (a)    First, there are fixed premium clubs, like ourselves and Raetsclub, in the Netherlands, which operate in the same fashion and give the same service as mutual P&I Club Associations, but are backed by commercial underwriters and/or the Lloyds market

    (b)    Secondly, some charterers, for example many of the large oil trading companies and majors, take out insurance cover directly from commercial underwriters and/or the Lloyds market.

    (c)    Finally, some of the mutual P&I associations underwrite charterers' as well as owners' risks – although this sometimes gives rise to conflicts between the cover provided to Owners and the cover provided to Charterers.

15    Naturally, the mutual P&I associations also reinsure on the commercial insurance market (typically Lloyds), as well. In this regard, I draw the Court's attention to the following extract from page 5 of Exhibit 4 to Mr Arghyrakis' declaration. There, in the very materials relied upon by Mr Arghyrakis, Syndicate 1036 states that:-

> *"We are the leading underwriter to many International Group P&I Associations, providing extended coverages over and above those offered by the Club Rules as well as reinsurance capacity and solutions."*

16    Common to any form of Charterers' liability cover however is the need for a swift mechanism for providing security as and when claims arise. This too is a service we offer our client Assureds.

17    As far as I am aware, in 2006 and 2007 Syndicate 1036 issued at least 8 letters of undertaking in total, 3 of which were put up to secure Rule B attachments. These were all put up by Michael Else & Company on behalf of Syndicate 1036. No doubt Syndicate 1036, which underwrites many more risks other than charterers' liability cover, will have secured many more claims.

18    Be that as it may, we have a long track record of securing Charterers' liabilities, as a mutual association since 1986 and as a fixed premium operator since 1999. There is no instance of which I am aware in which a letter of undertaking put up by Michael Else & Company on behalf of Syndicate 1036 in respect of the Charterers P&I Club liability cover has been dishonoured. Doing so would be fatal to our credibility in the market and I cannot believe that the Owners can genuinely have any fear that the guarantee tendered will in fact be dishonoured if presented for payment.

19    However, if this Court finds that an LOU put up by a Lloyds syndicate, with the strength and backing such as that behind Syndicate 1036, is not acceptable security to lift this attachment, then our ability, and the ability of any other fixed premium provider of charterers' liability insurance to offer the cover we currently do, will be severely

compromised, which in turn will leave many owners facing claims for damage, death and pollution without recourse to commercial underwriters if those claims are found to be their charterers' responsibility.

20   As pointed out by Mr Sunley in his affidavit, the Owners' lawyers initially indicated that a Charterers' Club letter was in principle acceptable to them, reversing this position once it became clear that the Charterers would not waive their request for counter-security.

21   I respectfully submit that this Court should not allow a tactical ploy to jeopardise cover which exists to protect both charterers and, ultimately, their owners and other 3rd party claimants.

22   In the circumstances, I respectfully ask the Court to lift the attachment based on the letter of undertaking currently tendered.

Andrew V. Goodyear

Sworn to before me
this 21st day of June, 2007

Commissioner of Oaths.

BARLOW LYDE & GILBERT LLP
BEAUFORT HOUSE
15 ST. BOTOLPH STREET
LONDON, EC3A 7NJ