# EXHIBIT 2

[1996] Vol. 2      LLOYD'S LAW REPORTS      299

Q.B. (Com. Ct.)]      The "Anangel Express"      PART 3

QUEEN'S BENCH DIVISION
(COMMERCIAL COURT)

Apr. 22, 23, and 24; May 13, 1996

---

ADRIATIC MARE ENTERPRISES S.A.

v.

NEWCO A.G.

(THE "ANANGEL EXPRESS")

Before Mr. Justice WALLER

**Charter-party (Time) — Performance guarantee — Validity — Shipowners alleged defendants guaranteed performance obligations of charterers under time charter — Charterers failed to comply with obligations — Shipowners claimed under guarantee — Whether binding contract of guarantee entered into.**

The defendants (Newco) had sold 35,000 tonnes Brazilian basic pig iron to Dongkuk Steel Mill c.&f. Korea shipment April/May and to fulfil that contract had bought the same tonnage from Grupo Viena Ltd. (Iron Trade Ltd.) f.o.b. Ponta da Madeira, Brazil for shipment May 16–31, 1993.

Newco also sold a further 5000 tonnes of Brazilian foundry pig iron to Nu Lake c.&f. Korea shipment April/May, 1993 and purchased a similar tonnage from Iron Trade Ltd. f.o.b. Ponta da Madeira, Brazil for shipment May 16–31, 1993.

Zaco were the German agents of KSH Schiffahrt G.m.b.H. (KSH) and they confirmed that they would meet Newco's freight commitments of between 35,000 and 40,000 tonnes.

KSH made their profits by chartering in vessels to fulfil their commitments and on occasions chartering in larger vessels to fulfil sub-charters obtaining completion cargoes for their own account.

KSH set about negotiating a charter for a vessel through Zaco. Zaco used German brokers Frachtkontor Junge and Co. (FCJ) who on May 11, 1993 contacted John Kilgour & Co. Ltd. (Kilgours), London based brokers with a Brazilian cargo expertise. Kilgours acted purely as intermediaries and approached the plaintiffs' brokers Agelef Shipping Co. (London) Ltd. (Agelef). Communications passed up and down the chain.

From the outset the plaintiffs made clear through Kilgours to FCJ that they would require a performance guarantee from Newco. That fact never came up the chain to Newco until May 17, 1993.

Negotiations continued between the parties and in the event the plaintiffs let their vessel *Anangel Express* to KSH under a time charter dated May 18, 1993. The reconfirmation of May 14, 1993 stated inter alia that:

> . . . charterers agree to performance guarantee to be as per Owners wording on Newco letter headed paper and signed by Newco . . .

KSH failed to comply with some of its financial obligations under the time charter and the owners claimed the outstanding sums under or as damages for breach of the contract of guarantee against Newco.

Newco contended that it never entered into any contract of guarantee with the owners. Newco's case was that although there were discussions between KSH and Newco as to the possibility of providing such a guarantee that discussion never culminated in any binding contract as between Newco and KSH never mind as between Newco and the owners.

———*Held*, by Q.B. (Com. Ct.) (WALLER, J.), that (1) on the facts and the evidence the only agreement that the owners ever had was between themselves and KSH that KSH would produce a performance guarantee; the negotiations between KSH and Newco had reached a stage where KSH could be confident that Newco would produce a guarantee if necessary; Newco were clear that they would produce a guarantee if it were asked for and if the arrangements were put in place so far as a completion cargo was concerned; however the guarantee was never actually asked for (*see* p. 303, col. 2);

(2) if the owners were to succeed they had to establish an agreement between them and Newco; they did not get that agreement as at the time they alleged i.e., May 17, 1993; such agreement as was reached was between KSH and the owners and possibly between KSH and Newco; it was doubtful whether such agreement as was reached between KSH and Newco was more than a firm understanding binding in honour, but even if it were more, no guarantee was ever produced by Newco in favour of the owners pursuant to whatever obligation Newco undertook vis-à-vis KSH; the owners' claim against Newco would be dismissed (*see* p. 303, col. 2).

---

This was an action by the plaintiffs Adriatic Mare Enterprises S.A. the owners of *Anangel Express* claiming against the defendants Newco A.G. outstanding sums under, or as damages for, breach of the contract of guarantee which they alleged Newco had granted in respect of the performance obligations of the charterers KSH Schiffahrt G.m.b.H., to whom the owners had chartered the vessel, KSH having failed to comply with some of its financial obligations.

Mr. Alistair Schaff (instructed by Messrs. Waterson Hicks) for the plaintiffs; Mr. Charles Priday (instructed by Messrs. More Fisher Brown) for the defendants.

The further facts are stated in the judgment of Mr. Justice Waller.

Judgment was reserved

Monday May 13, 1996

### JUDGMENT

**Mr. Justice WALLER:**

*Introduction*

This action concerns a claim on a disputed contract of guarantee. The plaintiff shipowner of *Anangel Express* ("owners") contend that the defendant ("Newco") entered into an enforceable contract of guarantee in respect of the obligations of a charterer KSH Schiffahrt G.m.b.H. ("KSH") under a time charter-party dated May 18, 1993. KSH failed to comply with some of its financial obligations under the charter-party and owners claim the outstanding sums under, or as damages for breach of, the contract of guarantee against Newco. It is somewhat disconcerting to find that the sum claimed is something less than U.S.$200,000, but that reflects the fact that owners feel strongly that a guarantee was granted by Newco, and Newco feel equally strongly that no such guarantee was entered into.

Newco contends that it never entered into any contract of guarantee with owners. Newco's case is that albeit there were discussions between KSH and Newco as to the possibility of providing such a guarantee, that discussion never culminated in any binding contract as between Newco and KSH never mind as between Newco and owners. Newco also assert that if any guarantee was offered on its behalf, such offer was unauthorized. In the final alternative, Newco assert that any contract of guarantee which was entered into, would be unenforceable under s. 4 of the Statute of Frauds, 1677 and/or for want of consideration.

*Background to the negotiations*

Newco had sold 35,000 tonnes Brazilian basic pig iron to Dongkuk Steel Mill c.&f. Korea shipment April/May, 1993 and to fulfil that contract had bought the same tonnage of basic pig iron from Grupo Viena Ltd. (Iron Trade Ltd.) f.o.b. Ponta da Madeira, Brazil for shipment Apr. 15 – May 15 (ultimately amended to May 16–31).

Newco also sold a further 5000 tonnes of Brazilian foundry pig iron to Nu Lake c.&f. Korea shipment April/May, 1993 and purchased a similar tonnage from Iron Trade Ltd. f.o.b. Ponta da Madeira, Brazil for shipment Apr. 1 – May 1 (amended May 16–31, 1993).

Newco had confirmation from Zaco, who were the German agents of, and indeed shared common officers and offices with KSH, that they would meet Newco's freight commitments for between 35,000–40,000 tonnes at U.S.$27.50 per tonne. This appears from telexes between Feb. 5–15, 1993 (*see* B2/1-2, 4–5, 7). Thus, as at February, 1993, KSH had a freight commitment to Newco to provide tonnage to Newco for voyages including a May, 1993 voyage from Brazil to Korea.

KSH contracted as principals and made their profits by chartering in vessels to fulfil their commitments and, on occasions, chartering in larger vessels to fulfil sub-charters (such as that with Newco) obtaining completion cargoes for their own account. KSH set about negotiating a charter for a vessel through Zaco, Zaco using German brokers Frachtkontor Junge and Co. ("FCJ").

FCJ were and are an established and well reputed firm of shipbrokers who would have appreciated that John Kilgour & Co. Ltd. ("Kilgours") who were London based brokers, had a Brazilian cargo expertise. Kilgours acted purely as intermediaries but would in their turn approach owners through owners' agents Agelef Shipping Co. (London) Ltd. ("Agelef"). It appears that FCJ's first contact with Kilgours was on or about May 11, 1993, and that it was from that stage that active broking took place, communications passing up and down the chain as is normal in such negotiations.

One of the problems for Zaco was that physically there were no vessels in the required size available in Brazil or South Atlantic and thus they were going to have to take up tonnage either from the Far East or India which would mean a pre-ballast voyage of 20–25 days. Their intention was to perform the voyage with tonnage of at least 50,000 DW or even bigger in order to have the chance of completing the vessel with additional cargo. (See fax Zaco to Novacom, (Newco's agents in Brazil) dated May 11, 1993, p. 42.) Serious negotiations started as at May 11, 1993. From the outset owners made clear, through Kilgours to FCJ, that they would require a guarantee from Newco. That fact never came up the chain to Newco itself until May 17, 1993. That in my view is an important factor.

*The negotiations*

As early as May 13, 1993 it would seem that KSH had offered a performance guarantee of U.S.$1,000,000 "given by Newco". This appears from faxes of the above date. That led to Agelef faxing Mr. Sayers of Kilgours a draft wording for a guarantee (B2/49) which made clear that owners required a guarantee to be issued on the guarantor's notepaper, signed by the guarantor's authorized signatory.

At this stage the brokers were quite substantially apart in relation to the daily rate of hire and other terms.

Matters were left inconclusive on May 13, 1993 but on May 14, 1993, first Kilgours reported to FCJ the owners' attitude to a guarantee in these terms:

> Can Newco afford 2.5 million if not what can they agree. Lets address this right now.