UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DEVAL DENIZCILIK VE TICARET A.S.,

                                                                                       **07 CIV 3397 (JGK)**

                 Plaintiff,

   -against-

REPINTER INTERNATIONAL SHIPPING CO.
S.A. and MIACHART CORPORATION LLC,

                Defendants.
------------------------------------------------------------x

**PLAINTIFF'S RESPONSE MEMORANDUM OF LAW
IN OPPOSITION TO MOTION
<u>FOR COUNTER-SECURITY</u>**

                                                   FREEHILL HOGAN & MAHAR, LLP
                                                   Attorneys for Plaintiff
                                                 Deval Denizcilik ve Ticaret A.S.
                                                 80 Pine Street
                                                 New York, NY 10005
                                                 (212) 425-1900
                                                 (212) 425-1901 fax

Of Counsel:
Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)

NYDOCS1/286076.1

# TABLE OF CONTENTS

| | |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| AGREED BACKGROUND FACTS | 1 |
| ARGUMENT | |
| POINT I | |
| A Plain Reading of Rule E Establishes That Counter-Security Is Not Appropriate At This Time | 2 |
| POINT II | |
| Defendants' First Counterclaim Does Not Arise Out of the Transaction That is the Subject of the Complaint and Does Not Allege Any Damages; Accordingly, No Counter-Security Should Be Awarded | 5 |
| POINT III | |
| Defendants' Second Request for Counter-Security For Their Claim for Unpaid Charter Hire by BSC Should Be Denied | 6 |
| POINT IV | |
| Defendants' Remaining Request for Counter-Security Is an Unripe Contingent Indemnity Claim for Which Counter-Security Should Not Be Required | 8 |
| POINT V | |
| Through Self-Help, Defendants Are Already Counter-Secured | 10 |
| CONCLUSION | 11 |

# TABLE OF AUTHORITIES

Cabassa v. Gummerson, 2006 U.S. Dist. LEXIS 41098
 (N.D.N.Y. Mar. 30, 2006) ..................................................................................4

Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd., 2005 U.S. Dist. LEXIS 22409
 (S.D.N.Y. Oct. 3, 2005)......................................................................................9

Finecom Shipping Ltd. v. Multi Trade Enterprises AG, 2005
 U.S. Dist. LEXIS 25761 (S.D.N.Y. Oct. 25, 2005)............................................7

Greenwich Marine, Inc. v. S.S. ALEXANDRA, 339 F.2d 901 (2d
 Cir. 1965)........................................................................................................8, 9

Partenreederei Wallschiff v. THE PIONEER, 120 F. Supp.
 525 (E.D.MI. 1954) ............................................................................................2

Result Shipping Co. Ltd. v. Ferruzzi Trading USA Inc., 56 F.3d
 394 (2d Cir. 1995) ..............................................................................................9

Starboard Venture Shipping, Inc. v. Casinomar Transp., Inc.,
 1993 U.S. Dist. LEXIS 15891 (S.D.N.Y. Nov. 9, 1993)....................................7

Staronset Shipping Ltd. v. North Star Nav. Inc., 650 F. Supp. 189
 (S.D.N.Y. 1987)...............................................................................................8, 9

Titan Nav., Inc. v. Timsco, Inc., 808 F.2d 400 (5th Cir. 1987)..........................................2

Washington-Southern Nav. Co. v. Balt. & Phila. Steamboat Co.,
 263 U.S. 629 (1924) ...........................................................................................3

## PRELIMINARY STATEMENT

This response memorandum of law is respectfully submitted on behalf of Plaintiff Deval Denizcilik ve Ticaret A.S. ("Deval") in opposition to that portion of the motion made by Defendants Repinter International Shipping Co. S.A. ("Repinter") and Miachart Corporation LLC ("Miachart") that requests that Deval be ordered to provide counter-security for the counterclaims asserted. For the reasons that follow, and as supported by the accompanying Arghyrakis Declaration, Defendants' application should be denied.

## AGREED BACKGROUND FACTS

The background facts essential to this portion of Defendants' application are relatively straightforward and are not contested. Deval is the owner of the M/V ORHAN DEVAL, and chartered the vessel to Repinter. A copy of the charter party contract is attached to the accompanying Arghyrakis Declaration of June 29, 2007 as Ex. 1. Miachart guaranteed Repinter's performance of the charter. *See* Arghyrakis Declaration Ex. 1. This charter is described in the parties' papers as "Charter No. 1".

Repinter, in turn, sub-chartered the vessel to Belarussian Shipping Co. ("BSC") pursuant to the terms and conditions of "Charter No. 2", and BSC sub-sub-chartered the vessel to Wajilam Exports (Singapore) Private Limited ("Wajilam") pursuant to the terms and conditions of "Charter No. 3"). Performance began pursuant to the three charters, but after some time disputes arose among the parties concerning, *inter alia*, liability for repairs to the vessel resulting (as alleged by Deval) from damage caused by stevedores.

Charter No. 1 provides that all disputes are subject to arbitration in London, England, and Deval commenced arbitration against Repinter and Miachart there. Deval commenced the instant action in order to obtain security pursuant to Rule B for its claims

in the London arbitration. Although Deval sought to restrain funds of both Charterer Repinter and Guarantor Miachart, thus far Deval has only successfully restrained funds of the Guarantor, Miachart. No funds of Repinter have yet been restrained in this action. Defendants Repinter and Miachart have filed and served an Answer with Counterclaims and now seek, pursuant to Rule E(7), counter-security for the counterclaims asserted.

## ARGUMENT

### Point I

### A PLAIN READING OF RULE E ESTABLISHES THAT COUNTER-SECURITY IS NOT APPROPRIATE AT THIS TIME

As a starting point, it is important to note that counter-security as requested by Defendants is not appropriate at this time. Rule E(7)(a) provides in pertinent part as follows:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise.

The requirement of Rule E(7) that the defendant must "give security" in order to obtain counter-security for counterclaims is satisfied by the arrest or the attachment of that defendant's property. *See* Partenreederei Wallschiff v. THE PIONEER, 120 F. Supp. 525, 528-29 (E.D.MI. 1954) (holding that where the original proceeding is either *in rem* or for attachment, the restraint of property by arrest or attachment is one in which the defendant has "given security" under Rule 50).[1] The concept of "giving security" has

---

[1] Rule 50 was the predecessor of Rule E(7). *See* Titan Nav., Inc. v. Timsco, Inc., 808 F.2d 400, 403 (5th Cir. 1987).

NYDOCS1/286076.1                              2

been found not to impute any sense of a voluntary giving of such security. *See generally* Washington-Southern Nav. Co. v. Balt. & Phila. Steamboat Co., 263 U.S. 629 (1924).

Here, since no funds or other property of Repinter have been restrained, Repinter cannot be said to have "given security". Accordingly, since the precondition for demanding counter-security – that it has first given security – is not met by Repinter, it is not presently in a position to be awarded counter-security for its counterclaims under the Rule. Repinter's request for counter-security should therefore be dismissed.

Miachart, on the other hand, has "given security" in the sense that certain of its electronic funds transfers ("EFT's") have been restrained pursuant to Rule B while passing through this District. Accordingly, Miachart may request under Rule E(7) counter-security for a counterclaim "that arises from the transaction or occurrence that is the subject of the original action". Miachart, however, is merely the Guarantor of Repinter's performance of Charter No. 1 and is not a charterer of the vessel and Deval therefore owes no contractual or other obligations to Miachart. Accordingly, Miachart has no counterclaim of its own against Deval that arises from the transaction or occurrence that is the subject of the original action.

In this regard, we note that in the London arbitration, Miachart has already taken the position that it is not Repinter's Guarantor and that it is not a party to Charter No. 1. This position taken in London directly contradicts the statement in paragraph 19 of the Defendants' Verified Answer with Counterclaims that "Defendants, as 'Charterers,' chartered the M.V. ORHAN DEVAL (the "Vessel") from Plaintiff Deval" and all the subsequent allegations that "Defendants" assert as counterclaims on the basis that they are both the charterers of the M/V ORHAN DEVAL. Allegations made in verified

pleadings are regarded as affidavits. <u>Cabassa v. Gummerson</u>, 2006 U.S. Dist. LEXIS 41098, *6 (N.D.N.Y. Mar. 30, 2006). Accordingly, either the statement in the Counterclaim is an admission that the position taken in London is incorrect (*i.e.*, Miachart is the Guarantor of Repinter), or the statement in the Counterclaim is incorrect. It appears, based on the language of the charter party itself, which provides that Charter No. 1 is between Deval as owners of the vessel "and Messr. Repinter International Shipping Company SA, Guatemala, fully guaranteed by Messr. Miachart Corporation LLC, Miami Florida, Charterers," that the statement in the Counterclaim is incorrect: only Repinter is the charterer; Miachart is a guarantor.[2]

Further support for this position comes from the Verified Complaint made in this District by sub-charterer BSC against Repinter and Miachart. That pleading indicates that "Defendant Repinter was the disponent owner of the Vessel";[3] that "Plaintiff [BSC] time chartered the Vessel from Repinter";[4] that "Plaintiff [BSC] is now forced to redeliver the Vessel to Repinter";[5] and "Plaintiff [BSC] will soon commence London Arbitration proceedings against [] Repinter in accordance with the terms of the contract".[6] Plaintiff BSC dissimilarly describes Miachart merely "as paying agent, or receiving agent, [which] arranges for other non-parties to satisfy the debts and obligations of Defendant Repinter and/or receive payments being made to Defendant Repinter" and "Defendant Repinter uses Defendant Miachart as a 'pass through' entity such that it can

---

[2] It is respectfully submitted that nothing should be made of the plural reference to "charterers" – Deval is only a single company, and no other entity owns the M/V ORHAN DEVAL, yet the charter similarly refers to Deval in the plural, as "owners".
[3] See Exhibit 3 to the Arghyrakis Declaration, ¶5.
[4] Arghyrakis Declaration, Ex. 3, ¶6.
[5] Arghyrakis Declaration, Ex. 3, ¶9.
[6] Arghyrakis Declaration, Ex. 3, ¶12.

NYDOCS1/286076.1                                    4

insulate itself from creditors".[7] Nowhere in the BSC action against Repinter and Miachart is there any allegation that Miachart was acting in the role (vis-à-vis BSC) of disponent owner of the vessel, which would indicate that Miachart was a charterer with respect to Deval.

As Repinter's Guarantor of Charter No. 1 to Deval, Miachart simply does not have any counterclaims of its own, much less the counterclaims asserted in Defendants' Verified Answer with Counterclaims, which are more accurately the counterclaims of Defendant Repinter only. Inasmuch as Miachart has no counterclaims of its own, it is not entitled to any counter-security from Deval.

**Point II**

**DEFENDANTS' FIRST COUNTERCLAIM DOES NOT ARISE
OUT OF THE TRANSACTION THAT IS THE SUBJECT
OF THE COMPLAINT AND DOES NOT ALLEGE ANY DAMAGES
ACCORDINGLY, NO COUNTER-SECURITY SHOULD BE AWARDED**

Defendants' first counterclaim alleges that Plaintiff Deval is refusing to accept the Defendants' tender of an LOU issued by its underwriting agents for tactical reasons in order to gain leverage over Defendants in the London arbitration. Plaintiff Deval denies this allegation and notes further that the allegation is wholly unsubstantiated. In any event, though, even if, *arguendo*, Defendants were correct, this "claim" does not arise out of the charter party breaches that are the subject of the underlying complaint. Accordingly, counter-security cannot be awarded. Such a "claim" (to the extent it even is a claim) is likely not even actionable (except to the extent that Defendants have already moved to compel Plaintiff to accept the proffered LOU in lieu of the restrained cash).

---

[7] Arghyrakis Declaration, Ex. 3, ¶15-16.

NYDOCS1/286076.1                                5

Moreover, however, Defendants have not alleged any damages arising as a result of Plaintiff's refusal to accept the LOU. Instead, Defendants complain only about a generalized "hardship" in "conduct[ing] their daily business activities." It is respectfully submitted that counter-security for such a "claim" is neither warranted under Rule E(7) nor appropriate under the circumstances. The Court need go no further.

**Point III**

**DEFENDANTS' SECOND REQUEST FOR COUNTER-SECURITY FOR THEIR CLAIM FOR UNPAID CHARTER HIRE BY BSC SHOULD BE DENIED**

Defendants' next counterclaim seeks to recover from Deval $556,127 in charter hire which Defendants claim would have been paid by BSC under Charter No. 2 (between BSC and Repinter) if the vessel damage had been repaired. It is respectfully submitted that Defendants' claim in this regard is entirely misdirected. Deval is not in privity with BSC, nor does it even have a copy of Charter No. 2. Arghyrakis Declaration ¶6. Deval is not responsible in any way, shape or manner for the collection of charter hire from BSC purportedly owed to Repinter. Repinter should seek recovery of such charter hire from BSC, not from Deval, which does not owe the money.

It is noted that there is no explanation at all given by Defendants why BSC failed to pay the charter hire. It is noted that Charter No. 2, much like Charter No. 1 (and nearly any other charter party contract) will contain provisions whereby a charterer (here, BSC) may legitimately deduct charter hire that would otherwise be owed. *See* Arghyrakis Declaration ¶11. There is simply no evidence given that BSC has deducted hire pursuant to such a clause, or why.

Even if, *arguendo*, all of the alleged breaches set forth in paragraphs 31-36 of the Counterclaims are correct (which is denied), no explanation is given why such breaches would result in the withholding or non-payment of hire by BSC under its separate charter party contract with Repinter. Tellingly, Defendants have never themselves alleged that the vessel was off-hire within the framework of Charter No. 1 with Plaintiff Deval. Therefore, either BSC's withholding is simply wrongful (in which case Repinter/Miachart should be pursuing BSC for payment), or the withholding or non-payment by BSC was legitimate pursuant to some clause in Charter No. 2 which is not "back to back" with any clause in Charter No. 1. Equally telling is the fact that Repinter/Miachart have not commenced any proceedings to recover the unpaid hire from BSC, or at the very least to seek security for the same from them. Arghyrakis Declaration ¶14.

In any event, the charter party contract (Charter No. 1) between Deval and Repinter (as guaranteed by Miachart) is subject to English law, and under English law, Deval could never be held liable to Repinter or Miachart on the allegations asserted in the Counterclaim. Arghyrakis Declaration ¶15.

Defendants' request, then, for counter-security for such a counterclaim is frivolous on its face and cannot be the basis for counter-security. It is well-established that counter-security will not be required on the basis of frivolous counterclaims. <u>Starboard Venture Shipping, Inc. v. Casinomar Transp., Inc.</u>, 1993 U.S. Dist. LEXIS 15891 (S.D.N.Y. Nov. 9, 1993); <u>Finecom Shipping Ltd. v. Multi Trade Enterprises AG</u>, 2005 U.S. Dist. LEXIS 25761 (S.D.N.Y. Oct. 25, 2005). Accordingly, the request by

Defendants for counter-security for charter hire not paid by BSC (which is not a party to this action) in the amount of $556,127 should be denied.

## Point IV

### DEFENDANTS' REMAINING REQUEST FOR COUNTER-SECURITY IS AN UNRIPE CONTINGENT INDEMNITY CLAIM FOR WHICH COUNTER-SECURITY SHOULD NOT BE REQUIRED

Defendants also seek counter-security in the amount of $390,322 as counterclaimed indemnity for their potential exposure to BSC. Defendants' request in this regard is ill-founded for two reasons.

First, factually, a plain reading of Charter No. 1 and the available information regarding Charter No. 2 indicates that as concerns the stevedore damage to the vessel, Repinter/Miachart cannot pass along liability it owes to BSC for non-repair to Deval, because under both charters, Repinter/Miachart are liable for such stevedore damage. See Arghyrakis Declaration ¶16-18.

Secondly, it is well established that the maritime attachment rules do not permit restraints in support of unripe contingent indemnity claims. Greenwich Marine, Inc. v. S.S. ALEXANDRA, 339 F.2d 901 (2d Cir. 1965). In Greenwich, the Second Circuit held that contingent indemnity claims were unripe where the party asserting the claim had not itself been sued on the claim. This issue was clarified by Judge Knapp of this District in Staronset Shipping Ltd. v. North Star Nav. Inc., 659 F. Supp. 189, 190-91 (S.D.N.Y. 1987) where the Court held that a maritime claim for indemnity was "ripe enough" to support a request for security if the plaintiff had itself been sued (or arbitration

commenced against it) with respect to the claim or if the plaintiff had incurred expenses or had been required to post security in favor of another.[8]

Here, there can be no question that Repinter/Miachart's request for the $390,322 in counter-security is a contingent indemnity claim – on its face, the counterclaim states that such funds were requested "to cover [Repinter/Miachart's] exposure to [BSC's] own claim brought against them as a result of [Deval's] actions." Counterclaim Paragraph 37(b). Defendants' claim, though, is not "ripe enough" to support their request for security. While it is true that Defendants have been sued by BSC, it is plain from the BSC Verified Complaint that the suit here is purely for security – it is not a suit on the merits of BSC's claims against Repinter/Miachart. The BSC Verified Complaint asserts that the merits are to be arbitrated in London, England. Arghyrakis Declaration Ex. 3 ¶11. The BSC Verified Complaint makes clear that such arbitration had not yet commenced at the time of filing. Arghyrakis Declaration Ex. 3 ¶12. To date, no such arbitration has commenced. Arghyrakis Declaration ¶8, 20. It also appears that Repinter/Miachart have not "given security" in favor of BSC.

Since Repinter/Miachart's request for counter-security in the amount of $390,322 is for an unripe contingent indemnity claim, it should be denied.

---

[8] It is respectfully submitted that any potential argument that Greenwich and Staronset apply only to Rule B security and not to Rule E counter-security is not well founded. It is well-established that the purpose of Rule E counter-security is to place the parties "on an equality" as respects security. See, e.g., Titan Nav., 808 F.2d at 403; Result Shipping Co. Ltd. v. Ferruzzi Trading USA Inc., 56 F.3d 394, 399-400 (2d Cir. 1995); Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd., 2005 U.S. Dist. LEXIS 22409, *9-10 (S.D.N.Y. Oct. 3, 2005). If the Plaintiff were not permitted to obtain security for contingent indemnity claims but the Defendant were permitted to do so, plainly the parties would not be "on an equality" as concerns security.

NYDOCS1/286076.1                              9

## Point V

## THROUGH SELF-HELP, DEFENDANTS ARE ALREADY COUNTER-SECURED

Defendants' solicitor Mr. Semark, in paragraph 20 of his June 21, 2007 Declaration, confirmed that Repinter/Miachart admitted certain sums were due to Deval. These amounts total $256,225.95 which have been wrongfully withheld by Repinter/Miachart. Arghyrakis Declaration ¶23. Additionally, Repinter/Miachart vastly overstated the amount of bunkers (fuel and lube oils) still on board the vessel when they redelivered it to Deval,[9] and wrongfully have withheld $118,646.43 which was due. Arghyrakis Declaration ¶24. Additionally, Repinter/Miachart admit the debt is due, but have nonetheless refused to pay charter hire due from April 26 – May 5, amounting to $78,540. Arghyrakis Declaration ¶25-26.

In all, the total amount admitted to be owed by Repinter/Miachart, but which they nonetheless have refused to pay, is $453,412.38. Arghyrakis Declaration ¶27. Since these funds which are rightfully due to Deval are in the possession of Repinter/Miachart, they are properly deemed counter-security. Accordingly, Repinter/Miachart are already counter-secured, and to the extent that any counter-security is required of Deval (which is denied), Deval should be credited at least this much as an offset.

---

[9] Under Charter Party No. 1, Repinter is entitled to a credit for the value of certain bunkers still on board at redelivery.

NYDOCS1/286076.1                                10

## **CONCLUSION**

For all the foregoing reasons, Defendants' application for counter-security should be denied in all respects.

Dated: New York, New York
      June 29, 2007

                          Respectfully submitted,

                          FREEHILL HOGAN & MAHAR, LLP
                          Attorneys for Plaintiff
                          Deval Denizcilik ve Ticaret, A.S.

By:    _____
                          Michael E. Unger (MU 0045)
                          Lawrence J. Kahn (LK 5215)
                          80 Pine Street
                          New York, NY 10005
                          (212) 425-1900
                          (212) 425-1901 fax