UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

DEVAL DENIZCILIK VE TICARET A.S.,

                Plaintiff,                07 CIV 3397 (JGK)

-against-                                    ECF CASE

REPINTER INTERNATIONAL SHIPPING
CO. S.A. and MIACHART CORPORATION
LLC.,

                Defendants.

------------------------------------------------------------x

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF MOTION FOR COUNTER-SECURITY**

                                                             KEANE & MARLOWE, LLP
                                                             Attorneys for Defendants
                                                             REPINTER INTERNATIONAL
                                                             SHIPPING CO. S.A. and
                                                             MIACHART CORPORATION LLC
                                                             197 Route 18 South Suite 3000
                                                             East Brunswick, New Jersey 08816
                                                             (732) 951-8300

Of Counsel:
Mary Ann C. Marlowe (MM-0723)
Christopher P. Keane (CPK-4394)

TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………………..ii

ARGUMENT……………………………………………………………………………………………...1

    POINT I.    DEFENDANTS HAVE SATISFIED ALL PREREQUISITES FOR A GRANT OF COUNTER-SECURITY PURSUANT TO RULE E(7)(a)…………………………....1

        A.    Both Repinter and Miachart are "Persons" Who Have "Given Security" For Plaintiff's Alleged Damages in the Original Action Pursuant to Rule E(7)(a)… ……1

        B.    As a Party to the London Arbitration and as the Guarantor of Repinter's Obligations Under the Charterparty, Miachart Stands in the Shoes of Repinter and Has a Comparable Right to Assert Counterclaims and Request Counter-security for Same……………………………………………………………………………..1

    POINT II.    PLAINTIFF'S MISCHARACTERIZATON OF DEFENDANTS' "FIRST COUNTERCLAIM" WARRANTS NO CONSIDERATION………………..………2

    POINT III.    DEFENDANTS' REQUEST FOR COUNTER-SECURITY FOR BSC'S UNPAID CHARTER HIRE SHOULD BE GRANTED……………………………….…..…3

        A.    Privity of Contract between Plaintiff Deval and Sub-Charterer BSC Is Not A Prerequisite………………………………………………………………………..3

        B.    Defendants' Request for Counter-Security for the BSC Unpaid Charter Hire has Legal as well as Factual Support Under Both English and New York Law….……..4

    POINT IV.    DEFENDANTS' CLAIM FOR COUNTER-SECURITY FOR BSC'S CLAIM IS VALID UNDER A RULE E (7) ANALYSIS…………………………………….....5

        A.    An Rule E(7) Analysis vs a Rule E(4)(f) Analysis…………………………..…..6

        B.    Defendants' breach of contract counterclaims and request for counter-security should be analyzed under the appropriate standards applicable to Rule E(7)……….6

        C.    Defendants' Counterclaim is "Ripe" Even Under a Rule E 4(f) "Ripeness" Standard…………………………………………………………………………7

        D.    Even If Defendants' Counterclaim Were An "Unripe Indemnity Claim," This Court Has the Discretion To Award Defendants Counter Security………………..9

        E.    Defendants' Counterclaims Are Well Supported……………………………..9

CONCLUSION……………………………………………………………………………………..10

## TABLE OF AUTHORITIES

### FEDERAL CASES

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,
  460 F.3d 434 (2d Cir. 2006) ................................................................................ 6

Bottiglieri Di Na Vigazione SPA v. Tradeline LLC,
  472 F. Supp. 2d 588 (S.D.N.Y. 2007) ............................................................. 6, 7

D.C.R. Trucking & Excavation, Inc. v. Aetna Casualty and Surety Co.,
  2002 U.S. Dist. LEXIS 26308 (E.D.N.Y. 2002) ................................................ 2

Daeshin Shipping Co. v. Meridian Bulk Carriers, Ltd.,
  2005 U.S. Dist. LEXIS 22409 (S.D.N.Y. 2005) ........................................ 7, 8, 10

Daeshin Shipping Co., Ltd. v. Meridan Bulk Carriers, Ltd.,
  2006 WL. 3462120 (S.D.N.Y. 2006) ................................................................ 1

Dongbu Exp. Co., Ltd. v. Navios Corp.,
  944 F. Supp. 235 (S.D.N.Y., 1996) ................................................................ 3, 9

Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S,
  333 F.3d 383 (2d Cir. 2003) ............................................................................... 3

Finecom Shipping Ltd. v. Multi Trade Enterprises AG,
  2005 U.S. Dist. LEXIS 25761 (S.D.N.Y. 2005) ................................................. 9

Greenwich Marine, Inc. v. S.S. ALEXANDRA,
  339 F.2d 901 (2d Cir. 1965) ........................................................................... 5, 7

In re Complaint of Kreta Shipping, S.A.,
  2000 WL. 33249253 (S.D.N.Y. 2000) .............................................................. 4

J.K. International, Pty., Ltd. v. Agriko S.A.S.,
  2007 U.S. Dist. LEXIS 10074 (S.D.N.Y. 2007) ................................................ 9

Jessica Howard Ltd. v. Norfolk Southern R.R. Co.,
  316 F.3d 165 (2d Cir., 2003) ............................................................................. 3

Northern Shipping Co. v. Eller & Co.,
  1987 U.S. Dist. LEXIS 5683 (E.D.Pa. 1987) .................................................... 2

Peter Fabrics, Inc. v. S.S. "Hermes",
  765 F.2d 306 (2d Cir. 1985) .............................................................................. 4

Result Shipping Co., Ltd. v. Ferruzzi Trading USA, Inc.,
  56 F.3d 394 (2d Cir. 1995) ................................................................................ 6

Sonito Shipping Co., Ltd. v. Sun United Maritime, Ltd.,
    478 F. Supp. 2d 532 (S.D.N.Y. 2007) ....................................................................... 7

Staronset Shipping Ltd. v. North Star Navigation Inc.,
    1993 U.S. Dist. LEXIS 15891 (S.D.N.Y. Nov. 9, 1993) ............................................. 5

Verton Navigation, Inc. v. Caribica Shipping Ltd.,;,
    1991 U.S. Dist. LEXIS 6722 (S.D.N.Y. 1991) ........................................................... 2

### DOCKETED CASES

Hibiscus Shipping, Ltd. v. Novel Commodities S.A.,
    No. 04 Civ. 2344, at 3-4 (S.D.N.Y. 2004) .................................................................. 9

Travelodge Hotels, Inc. v. SD Hospitality, Inc.,
    Civ. No. 06-cv-1736 ................................................................................................... 2

### FEDERAL RULES

Admiralty, Maritime Claims, Supplemental Rule B ............................................... 5,6,7,9

Admiralty, Maritime Claims, Supplemental Rule E(4)(f) ....................................... 5,6,7,8

Admiralty, Maritime Claims, Supplemental Rule E(7)(a) ....................... 1,2,4,5,6,7,8,9,10

### MISCELLANEOUS

Robert J. Zapf, In Rem Procedures: A Sea Change Underway—Recent and Proposed
    Changes to the Admiralty Rules, 15 U.S.F. Mar. L.J. 77, 107 (2002-2003) ............... 1

# ARGUMENT

### POINT I: DEFENDANTS HAVE SATISFIED ALL PREREQUISITES FOR A GRANT OF COUNTER-SECURITY PURSUANT TO RULE E(7)(a).

Rule E(7)(a) provides clear guidelines as to when a counterclaimant is entitled to countersecurity.[1] As demonstrated below, Defendants have fulfilled both conditions necessary for a grant of counter-security.

### A. Both Repinter and Miachart are "Persons" Who Have "Given Security" For Plaintiff's Alleged Damages in the Original Action Pursuant to Rule E(7)(a).

Plaintiff's opposition brief was filed prior to the issuance of the Travelers bond in the full amount of Plaintiff's claims herein. The bond was issued and accepted by Plaintiff on behalf of both defendants. Thus, both defendants have "given security for damages in the original action." Plaintiff's brief acknowledges only the prior attachment of Miachart's assets, and suggests that counter-security should be denied because Repinter has not given security. Since both defendants have now given security, both have satisfied the first prerequisite of Rule E(7)(a).

While no court has addressed the scope of the term "person" since the Rule's amendment in 2000, the Rule's history and a plain reading support Defendants' contention that Miachart qualifies as a "person" who has given security and, accordingly, is entitled to counter-security. Prior to 2000, Rule E(7)(a) required counter-security when "the *defendant or claimant* in the original action has given security." As of December 1, 2000, the Rule required countersecurity "when a *person* has given security for damages in the original action" (emphasis added).[2] Given the history of this change, Miachart qualifies as *either* a "defendant" under the old phrasing or a "person" under the new. Moreover, this Court has strictly construed Rule E(7)(a). See <u>Daeshin Shipping Co., Ltd. v. Meridan Bulk Carriers, Ltd.</u>, 2006 W.L. 3462120, at *1 (S.D.N.Y. 2006) (non-party assignee of plaintiff's claim need not post countersecurity since rule applies only to "plaintiffs"). Thus, under a plain reading of "person who has given security," Miachart, as well as Repinter, clearly qualifies.

### B. As the Guarantor of Repinter's Obligations Under the Charterparty, Miachart has a Comparable Right to Assert Counterclaims and Request Counter-security for Same.

Plaintiff's argument that Miachart is not entitled to counter-security because it is "merely [Repinter's] Guarantor"…and is not a charterer of the vessel" is equally erroneous. Under Plaintiff's totally unsupported reasoning, this defendant allegedly "has no counterclaims of its own [and] … is not entitled to any counter-security from Deval" despite the fact that: (1) Deval attached approximately $800,000 in Miachart's assets;

---

[1] Rule E(7)(a) states as follows: When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given *must* give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise. (emphasis added)

[2] The change in terminology reflected a general move away from the use of the word "claimant," which was largely eliminated from the Supplemental Rules in the 2000 amendments. See Robert J. Zapf, <u>In Rem Procedures: A Sea Change Underway—Recent and Proposed Changes to the Admiralty Rules</u>, 15 U.S.F. Mar. L.J. 77, 107 (2002-2003).

(2) Plaintiff is now fully secured by a bond issued on behalf of both Defendants and (3) Miachart could theoretically be fully liable for the alleged claims asserted by Plaintiff in London. (Opp. Brf. at 3)

The relevant caselaw makes clear that the "person" who may give and request security under Rule E(7)(a), is not limited to a plaintiff's contractual partner, as Plaintiff suggests. Nor does Miachart's status as guarantor limit its ability to assert any counterclaim available to Repinter, or to seek counter-security related to same. There is no requirement, as urged by Plaintiff (Opp.Br.at 3-5) that Miachart assert a counterclaim "of its own" (presumably as opposed to asserting a counterclaim of Repinter's) in order to be entitled to counter-security. In fact, it is well-established that a guarantor is entitled to assert any defense or raise *any counterclaims* that would be available to its principal. See D.C.R. Trucking & Excavation, Inc. v. Aetna Cas. and Sur. Co., 2002 U.S. Dist. LEXIS 26308, at *14 (E.D.N.Y. 2002) (absence of privity did not preclude defendant-guarantor from counterclaiming for indemnification).[3]  See also Travelodge Hotels, Inc. v. SD Hospitality, Inc., Civ. No. 06-cv-1736  (where guarantors and principals were joined as defendants, guarantors have standing to assert principals' counterclaims against plaintiff); see also to the same effect, Northern Shipping Co. v. Eller & Co., 1987 U.S. Dist. LEXIS 5683, at *2 (E.D.Pa. 1987).

**POINT II:  PLAINTIFF'S MISCHARACTERIZATON OF DEFENDANTS' "FIRST COUNTERCLAIM" WARRANTS NO CONSIDERATION.**

It is axiomatic that claims and counterclaims between vessel owners and charterers arising out of a vessel charter are considered "arising out of the same transaction" for purposes of Rule E(7).  Verton Navigation, Inc. v. Caribica Shipping Ltd., 1991 U.S. Dist. LEXIS 6722 (S.D.N.Y. 1991). The Counterclaims of Defendants, as set forth in their Answer and Counterclaims, all arise from Charter No. 1.

The various arguments asserted in Point II of Plaintiff's brief do not contest this well-established principle and are all erroneously premised upon an incorrect identification of Defendants' "first counterclaim," allegedly being Deval's refusal to accept the Defendants' tendered LOU. (Opp. Br. at 5-6) Defendants' first counterclaim, however, is not set forth at paragraph 29 of Defendants' Verified Answer and Counterclaims. "Defendants' Counterclaims Against Plaintiff" begin at paragraph 30.  Paragraph 29 simply reflects Defendants' objection to Plaintiff's wrongful refusal to accept either a Charterers Club or Syndicate 1036 LOU.  The counterclaims for which Defendants do seek counter-security, excluding interest and costs, are precisely quantified at paragraphs 37 of Defendants' May 22, 2007 Verified Answer and Counterclaims:

   (a) $556,127  in hire withheld from Charterers by their Sub-Charterers, BSC, by reason of Owners' breaches of Charter No. 1; and,

   (b) $390,322 to cover Charterers' exposure to Sub-Charterers' own claim brought against them as a result of Owners'/the Master's actions;

---

[3] This is consistent with the absence of any need for privity on the part of the guarantor to assert any counterclaims of its principal under English law.  See paragraph three of the July 19, 2007 Reply Declaration of David Martin Semark ("Semark Reply Decl.") and Exhibit 1 thereto wherein Mr. Semark discusses the relevant English law counterpart to this well established principle of law.

2

Therefore all of the arguments Plaintiff proffers in support of its position that Defendants' "first counterclaim" does not warrant counter-security should be rejected  As correctly stated at the conclusion of Plaintiff's Point II, "The Court need go no further."

**POINT III:  DEFENDANTS' REQUEST FOR COUNTER-SECURITY FOR BSC'S UNPAID CHARTER HIRE SHOULD BE GRANTED.**

**A.  Privity of Contract between Plaintiff Deval and Sub-Charterer BSC Is Not A Prerequisite.**

Turning to Defendants' request for counter-security in relation to the unpaid charter hire which would have been paid to Defendants' by subcharterer BSC (under Charter No. 2), but for Plaintiff Deval's various breaches (under Charter No. 1), Plaintiff argues that, because it is not in privity with BSC, Defendants' counterclaim is "entirely misdirected." [4] A review of the relevant caselaw regarding this privity issue, however, reveals the lack of any merit to this argument.

With respect to the Repinter/BSC sub-charter, the $556,127 in unpaid hire constitutes "contract damages", and the $390,322 constitutes "consequential damages."  See Jessica Howard Ltd. v. Norfolk Southern R.R. Co., 316 F.3d 165, 169-70 (2d Cir., 2003) (distinguishing between consequential and contract damages).  However, with respect to the Deval/Repinter head-charter, both the $556,127 and the $390,322 are consequential damages, as these figures have nothing to do with contract damages in the Deval/Repinter sub-charter, but rather represent the total loss as a consequence of Deval's breaches. As demonstrated below, since the Repinter/BSC unpaid hire is a consequential damage stemming from Plaintiff's breach of the Deval/Repinter head-charter, it can be recovered by Defendants from Plaintiff despite the fact that Deval is not a signatory to Repinter/BSC sub-charter.

In Dongbu Exp. Co., Ltd. v. Navios Corp., 944 F.Supp. 235 (S.D.N.Y., 1996), a time charterer sought security for a London arbitration with the vessel owner arising from the premature termination of the charter. After the attachment issued, the owner moved for a reduction of the attachment and for countersecurity. The court granted security and counter security to the two parties, including security to the charterer for potential liability to the subcharterers due to the owner's breach.

Plaintiff's attempted distinction between the counterclaims for unpaid charter hire and for Defendants' exposure to BSC's claims is also without merit.  Courts have generally ordered full indemnification for liability to a third party caused by a breach by one of the parties before the court.  See eg., in Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383 (2d Cir. 2003) wherein the cargo owner was ordered to indemnify the charterer for the full amount of the latter's liability to the owner, since the charterer's breach against the owner was caused by the cargo owner's breach against the charterer.  No distinction was made between the different types of damages for which the charterer was to be indemnified, as Deval attempts to do herein.  Furthermore, distinguishing between types of damages subject to

---

[4] More specifically, without citing any support whatsoever, Plaintiff argues that Defendants' only recourse is to seek recovery of this amount directly from BSC.  See Plaintiff's Opposition Brief at 6; Arghyrakis Decl. at ¶ 6.

indemnification is an unprecedented effort in the maritime context wherein indemnification has been broadly construed. See, e.g., Peter Fabrics, Inc. v. S.S. "Hermes", 765 F.2d 306, 315-16 (2d Cir. 1985) ("in maritime law when a party defending a claim is entitled to indemnity, the indemnitor's liability includes the indemnitee's reasonable attorneys' fees.") Indemnity in the maritime context is also viewed as an equitable concept, presumably immune from such technical distinctions as Deval attempts to draw. See In re Complaint of Kreta Shipping, S.A. 2000 WL 33249253 (S.D.N.Y. 2000)("[i]n the absence of any contractual relationship, the obligation to indemnify may be imposed as a matter of equity "…. (citation omitted))

As noted above, Defendants seek consequential damages arising from both claims relating to Plaintiff's breaches of the Deval/Repinter charter. Given that Defendants' damages are consequential and stem from Plaintiff's breach of the Deval/Repinter charter, Defendants' can recover the unpaid hire under the Repinter/BSC charter. It follows that Defendants are therefore entitled to Rule E(7) counter-security for same.

**B. Defendants' Request for Counter-Security for the BSCUnpaid Charter Hire has Legal as well as Factual Support Under Both English and New York Law.**

Plaintiff argues that Defendants' counterclaim for BSC's unpaid hire is allegedly "frivolous" in that:

(1) There is allegedly no evidence that BSC deducted hire pursuant to a charter party clause which permits hire to be legitimately deducted (Opp. Br. at 6);

(2) There has allegedly been no explanation as to why Deval's breaches would result in BSC withholding hire. (Opp. Br. at 7);

(3) Defendants have allegedly never claimed that the vessel was off-hire during Charter No. 1 in which case BSC's withholding is simply wrongful and Defendants should be pursuing BSC. (id.); and

(4) Deval allegedly can not be held liable to Defendants under English law. (Id.)

All of the above are factually and/or legally incorrect as discussed below.

 (1) As stated at paragraph 29 of the Semark Reply Decl., Clause 34 of both Charterparties No. 1 and No. 2 provide that: "in the event of loss of time either in port or at sea…by any refusal of the Master or crew to perform their duties, the hire shall be suspended…" [5] Moreover, under English law, which governs all three charterparties, "a charterer has a right to withhold hire where the breach of the shipowner has deprived or prejudiced him in the use of the ship (the so-called right of "equitable set-off")( Semark Reply Decl., ¶ 2 and Exh. 17 thereto). Thus, not only is there a provision in the charterparties which permits BSC to withhold hire, there is a general right to do so where, as in the instant case, the shipowner's breach has resulted in the charterer's (or sub-charterer's) being deprived of the use of the vessel.

(2) In its Verified Complaint, BSC clearly refers to "breach of stevedore damage provisions contained in the charter party and failure to make significant repairs" which deprived BSC of its use of the Vessel.(Argyrakis Decl. Exh. 3, ¶¶ 7-9) Defendants, in turn, allege that it was Plaintiff's responsibility to make the repairs and that the Master/ Deval's conduct in obstructing the repair efforts constituted a

---

[5] The head and subcharterparties are "back-to-back" in all material respects, including the redelivery dates and redelivery places. (Semark Reply Decl. at ¶7)

4

repudiation of the charterparty which entitled BSC to withhold hire. ( Semark Reply Decl., ¶ 16(j)). BSC's solicitors have similarly advised Defendants' solicitors that, in their view, the damages sustained by BSC were "not due to any fault of theirs [BSC] nor…any direct fault of your clients [Repinter]."  They specifically noted that Deval's actions and those of its Master [Deval's employee] caused Repinter to be in breach of its obligations under Charterparty No. 2.[6]

(3)  Defendants have, in fact, claimed damages for the period when the vessel was off hire from BSC's perspective.  Neither BSC nor Repinter had use of the vessel between April 4th and May 5th, the period during which Deval wrongfully withheld the vessel's services and wrongfully insisted that Charterers repair all of the alleged "stevedore damage."  Thus, Repinter should recover hire which it has already paid to Deval, which then can be credited against the claim for hire rightfully withheld by BSC under the sub-charter as a result of Deval's breaches under Charter No. 1.

(4)  With respect to Deval's unsupported claim that it could never be held liable to Defendants for the unpaid hire under English law (Arghyrakis Decl., ¶ 15; opp. br. at 7), we respectfully refer the Court to the doctrine of "equitable set-off" discussed in no. (1) above and Exhibit 17 to the Semark Reply Declaration.

### POINT IV: DEFENDANTS' CLAIM FOR COUNTER-SECURITY FOR BSC'S CLAIM IS VALID UNDER A RULE E (7) ANALYSIS.

In Point IV Plaintiff argues that Defendants' counterclaim for their potential liability to Sub Charterers, BSC, is an "unripe contingent indemnity claim."   Plaintiff not only erroneously characterizes Defendants' breach of contract claim, it also erroneously analyzes Defendants' request for Rule E(7) counter-security by applying a Rule E(4)(f) vacatur analysis.

Neither of the two decisions relied upon by Plaintiff[7] concerned a request for counter-security, but rather addressed the appropriateness of the initial security attached/seized by one of the parties.  Staronset concerned the propriety of the attachment of assets obtained by the Plaintiff shipowner under Rule B.[8]  Similarly, Greenwich Marine addressed the propriety of the arrest of the shipowner's vessel by the charterer who sought to secure a loss sustained by a subcharterer.[9]  As demonstrated below, there is no dearth of caselaw regarding one's entitlement to Rule E(7) counter-security and the requirements one must satisfy in connection therewith.  Plaintiff's focus upon a Rule E4(f) vacatur analysis reflects the fact that Rule E(7) cases simply do not analyze the "ripeness" of a person's claim for counter-security.[10]

---

[6] Semark Reply Decl., ¶ 34 and April 24, 2007 letter from BSC's solicitors to Defendant's solicitors attached as Exh. 18.
[7] See Opp. Brf. at 8-9 citing Greenwich Marine, Inc. v. S.S. ALEXANDRA, 339 F.2d 901 (2d Cir. 1965) and Staronset Shipping Ltd. v. North Star Navigation Inc., 1993 U.S. Dist. LEXIS 15891 (S.D.N.Y. Nov. 9, 1993).
[8] See Staronset Shipping Ltd., 659 F. Supp. at 190.
[9] See Greenwich Marine, Incorporated, 339 F.2d  at 908.

[10] Correctly anticipating Defendants' challenge to these decisions,  plaintiff included a footnote string citation to three Rule E(7) counter-security decisions at page 9, n.8 of its brief and a single statement relating only to the indisputable objective of

### A. An Rule E(7) Analysis vs a Rule E(4)(f) Analysis.

A thorough discussion of a Rule E(7) analysis for counter-security is set forth in Result Shipping Co., Ltd. v. Ferruzzi Trading USA, Inc., 56 F.3d 394 (2d Cir. 1995). After citing the version of Rule E(7) then in effect, the Second Circuit noted that the mandatory language of the rule is tempered by the final sentence which gives the court wide discretion in deciding whether to award counter-security.

> In exercising this discretion, the court should be guided primarily by two principles…On the one hand, the purpose of Rule E(7) is "to place the parties on an equality as regards security,"…(citations omitted) which usually [*400] favors granting countersecurity when a defendant whose property has been attached asserts non-frivolous counterclaims growing out of the same transaction, …. On the other hand, the Rule is not intended to impose burdensome costs on a plaintiff that might prevent it from bringing suit.…(citations omitted) In balancing these policies, the trial court is to be guided by the essential and equitable purposes of the rule.

See id. at 399 (citing Titan Navigation, 808 F.2d at 404).

The nature and purpose of a Rule E(4)(f) vacatur analyses employed in Rule B attachment and Rule C arrest cases, such as those cited by Plaintiff Deval herein, is quite different. Under Rule E(4)(f), a plaintiff must demonstrate, inter alia, a valid ("ripe") prima facie admiralty claim against the defendant, absent which the court must vacate the attachment. See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006).

### B. Defendants' breach of contract counterclaims and request for counter-security should be analyzed under the appropriate standards applicable to Rule E(7).

As is clear from paragraphs 30-37 of Defendants' Verified Answer and Counterclaims,[11] Defendants' counterclaims are grounded in breach of contract and based upon Plaintiff's breaches of provisions 8 and 32 of Charter No. 1. In a recent decision, this Court distinguished between a breach of contract claim, which accrues at the time of the breach, and an indemnity claim. See Bottiglieri Di Na Vigazione SPA v. Tradeline LLC, 472 F. Supp. 2d 588, 590 (S.D.N.Y. 2007). Applying English law, the court in Bottiglieri quoted from the seminal English case that addressed the "ways in which person (A) who has become liable to (B) may be able to obtain redress from (C)", the first of which is applicable in the instant dispute:

> The first way is by an action for damages for breach of contract…. In such a case (A)[Defendants Repinter/Miachart] will be in a position to claim that the incurring of his liability to (B)[SubCharterer BSC] flowed directly from an act of (C)[Plaintiff Deval] which constituted a breach of a contract between (A) and (C) .... The cause of action will date from the date of breach. Id. (quoting *The Caroline P*, [1984] 2 Lloyd's Rep. at 474-7).

---

Rule E(7) to place the parties on an equal footing with respect to security. Plaintiff's footnote citation to these three decisions, along with its statement regarding the undisputed, well established goal of Rule E (7) adds no support to Plaintiff's misplaced reliance upon the Staronset Shipping and Greenwich Marine vacatur decisions and, in fact, only further supports Defendants' request for counter-security herein.

[11] See Exh. 5 to the May 24, 2007 Marlowe Declaration.

Courts determine whether a party has a breach of contract claim or an indemnity claim by examining the party's allegations in the complaint. In Bottiglieri, the court determined that the plaintiff's claim was an indemnity claim because, unlike paragraphs 30-37 of Defendants' Answer and Counterclaims herein, that plaintiff did "not allege that any act by defendant increased plaintiff's potential liability" to a third party. Id. at 591.

The distinction between a Rule E(4)(f) vacatur analysis and a Rule E(7) analysis for counter-security is even more clearly seen in Daeshin Shipping Co. v. Meridian Bulk Carriers, Ltd., 2005 U.S. Dist. LEXIS 22409 (S.D.N.Y. 2005), wherein this court granted both defendant's motion for counter-security and its motion to reduce the security initially attached by the plaintiff.  It is significant to note that the Daeshin court applied Rule E(7) and Rule E(4)(f) standards to the two motions, respectively. For the Rule E(4)(f) vacatur motion, the court examined whether the claim against the plaintiff was ripe; for the Rule E(7) counter-security motion, the court examined whether the claims were colorable and arose from the same transaction. Id.  See also Sonito Shipping Co., Ltd. v. Sun United Mar., Ltd., 478 F. Supp. 2d 532, 540 (S.D.N.Y. 2007) noting that issue of ripeness (a valid maritime claim) applies to Rule E(4)(f) motions that challenge Rule B attachments: "the validity of the Rule B attachment…depends upon whether, at the time [the plaintiff] filed its complaint, it had a valid maritime claim against [the defendant] which entitled [the plaintiff] to the attachment."[12]

Accordingly, the issue of "ripeness" is an appropriate consideration for Rule B(1) attachment claims; it is inappropriate herein for an evaluation of Defendant's breach of contract counterclaims and request for counter-security.

### C. Defendants' Counterclaim is "Ripe" Even Under a Rule E 4(f) "Ripeness"Standard.

Even if Deval were correct in addressing the issue of the ripeness, which is denied, Defendants' breach of contract counterclaim is "ripe." Basic contract law principles dictate that in breach of contract claims, "[t]he cause of action will date from the date of breach." Bottiglieri, 472 F. Supp. 2d at 590.  Here, Deval's various breaches of Charter No. 1 accrued well before  the New York Rule B attachment proceedings were commenced by BSC and Deval.  Accordingly, there is no question but that Defendants' counterclaims are ripe and warrant a grant of Defendants' request for counter-security.

Finally, even if this Court characterizes Repinter/Miachart's second counterclaim as an indemnity claim, it must still be considered ripe. Claims for indemnity are ripe when the plaintiff seeking the indemnity *offers*

---

[12] Deval's reliance upon Greenwich Marine to show that Repinter/Miachart's counterclaims are "unripe" is misplaced, even putting aside for the moment the breach of contract/indemnity distinction discussed above.  In Greenwich, the court found the plaintiff's indemnity claim premature because it was "exceedingly probable" that the plaintiff would not need to sue for indemnification. Id. at 905. One of the controlling facts in Greenwich was the fact that the third party was suing the defendant and not the plaintiff who brought the indemnity claim. Id. Unlike the plaintiff in Greenwich, Defendants Repinter/Miachart are being sued by BSC; BSC is not suing Deval.

*evidence of a suit or a claim* against it by a third party. See Daeshin Shipping, 2005 U.S. Dist. LEXIS 22409 at *7-8. (indemnity claims are ripe when there is evidence of an impending arbitration)

As noted above, in Daeshin, the defendant made a Rule E(4)(f) motion to vacate an attachment and a Rule E(7) motion seeking counter-security. Id. at *2 In its Rule E(4)(f) motion, the defendant argued that the plaintiff's indemnity claim was premature because no lawsuit had been initiated against the plaintiff. Id. at *7 The court found that claims for indemnity were not premature when the "record indicates that arbitrators have already been appointed" and "that correspondence has been circulated among the various parties asserting specific damage claims." Id. Moreover, after reviewing the records, the court found that "it is not unduly speculative to assume that the physical damage claims are being asserted down the chain of charter parties and that plaintiff has a reasonable belief that it faces potential liability." Id. The fact that no lawsuit had been initiated against the plaintiff was not controlling. Id.

In the instant case, the Defendants' second counterclaim is ripe for the very same reasons.  First, BSC has sued Defendants in New York, attached their assets via an April 30, 2007 order of attachment and have put both Defendants and Plaintiff on notice that BSC "will soon" commence London Arbitration proceedings against [] Repinter in accordance with the terms of the contract."[13]  Second, the "London Arbitration proceedings have been commenced under all three fixtures [charters]."  Deval, Repinter, and BSC have now appointed arbitrators down the chartering chain ( Semark Reply Decl at ¶¶ 8(a)-(c) and Exhs. 3-4).  It is likely that Wajilam will be appointing Mr. Anthony Scott as their nominated arbitrator, whose appointment will then be passed up the chartering chain, making the panel in all three matters the same. (Id. at ¶ 8(d) and Exh. 5)  The parties are, in fact, waiting for Plaintiff Deval herein to present its claim in the "head reference" which it has not as yet done ( id. at ¶ 11).  When Plaintiff does so,  "the factual allegations will be passed down the chartering chain and the contrary case passed upwards in accordance with a common set of procedural directions from the Tribunal."  Id.

Moreover, no negative inference should be drawn about the viability of Defendants' counterclaims under English law simply because Defendants had not, as of June 29th, "asserted such counterclaims" in the ongoing arbitration. (Semark Reply Decl. ¶10).  Deval's failure to have appointed an arbitrator as of that date, combined with its failure since then to have served any claim submissions, has deterred the progress in London upon which Plaintiff now disingenuously attempts to capitalize by characterizing Defendants second counterclaim as "unripe."[14]  For the same reason, no weight should be given to Plaintiff's suggestion that Defendants' counterclaim is somewhat questionable since Defendants have not as yet commenced arbitration

---

[13] See para. 12 of BSC's Verified Complaint attached to the June 29, 2007 Declaration of G. Arghyrakis', Exh. 2.

[14] Deval's nominated arbitrator was successfully challenged as being a barrister and not being a "commercial man."[14] Plaintiff has made no attempt to  nominate another arbitrator, so, while under English law, the proceedings have been commenced by the nomination, no panel has yet been constituted and no submissions have as yet been served.

proceedings against BSC. Again, this will be done "down the chain" once Deval has served its claims submissions and/or evidence in the head-reference (Semark Reply Decl., ¶13) Finally, given that Plaintiff acquired its April 30, 2007 Rule B Order of Attachment months before even appointing its arbitrator and the fact that arbitration proceedings in London have officially commenced, there is simply no basis for characterizing Defendants counterclaims as "unripe."

### D. Even If Defendants' Counterclaim Were An "Unripe Indemnity Claim," This Court Has the Discretion To Award Defendants Counter-Security.

Even if this Court should find that Repinter/Miachart's second counterclaim is an "unripe indemnity claim" a plain reading of Rule E(7) "makes clear that the trial court possesses broad discretion in ordering countersecurity." Finecom Shipping Ltd. v. Multi Trade Enters. AG, 2005 U.S. Dist. LEXIS 25761, *2 (S.D.N.Y. 2005). Courts are not likely to dismiss even a premature claim if there is "some set of peculiar facts about the case and the equities of the case favor the plaintiff. [counter-claimant]". J.K. Int'l, Pty., Ltd. v. Agriko S.A.S., 2007 U.S. Dist. LEXIS 10074, *13 (S.D.N.Y. 2007). For example, a claim letter has been, deemed sufficient to sustain an attachment of a defendant's assets even though a third party had yet to file suit or seek arbitration of claims against the plaintiff. Hibiscus Shipping, Ltd. v. Novel Commodities S.A., No. 04 Civ. 2344, at 3-4 (S.D.N.Y. 2004). In another case, the court granted counter-security to place the parties "on equal footing" and because the grant of security would not be "so burdensome as to prevent [the defendant] from bringing suit." Dongbu Express Co., 944 F. Supp. at 239.

Plaintiff Deval is now fully secured and the London arbitrations have commenced. Unless this Court deems Defendants' counterclaims frivolous, their request for counter-security should be granted as a denial of counter-security would undermine the very goal of Rule E(7).

### E. Defendants' Counterclaims Are Well Supported

While the presumptive grant of counter-security is conditioned upon the counterclaim not being frivolous, see Finecom Shipping Ltd. v. Multi Trade Enters. AG, 2005 U.S. Dist. LEXIS 25761 (S.D.N.Y. 2005), it is not the function of this Court to determine the facts or interpret the charter party. That is the function of the arbitrators in London. This Court's need only determine whether Defendants' counterclaims are frivolous. Daeshin Shipping, 2005 LEXIS 22409 at *9.

It cannot be genuinely denied that Defendants' counterclaims herein are colorable, to say the least. Plaintiff's assertion that Defendants cannot pass along liability they owe to BSC because Defendants are allegedly liable for stevedore damage under both charters is not supported by the facts or the law ( Opp. Br. at 8 citing to Arghyrakis Decl. at ¶¶ 16-18). Mr. Arghyrakis suggests at paragraph 8 that Defendants are liable for the stevedore damage under Charter No. 2 by quoting language from BSC's Verified Complaint which places the responsibility upon the disponent owners to repair the damage to the vessel. However, what Mr. Arghyrakis fails to make clear is that, given the (disponent)Owner/(sub)Charterer relationship of

9

Repinter to BSC in Charter No. 2, Repinter's liability therein would be passed through to Deval as the Owner under Charter No. 1 in a "back to back" fixture. Thus, if Repinter, as disponent owner under Charter No. 2, is, in fact, found liable for the stevedore damage, then Repinter can recover the damages owed to BSC arising from Deval's breach, under the back-to-back terms reflected in Charter No. 1.

Mr. Arghyrakis offers no evidence that the terms of the two charterparties are not back-to-back, but merely self-servingly infers that to be the case. In actuality, the issue as to whether the charters are back-to-back is easily resolved by reference to a November 15, 2006 fixture recap which amended some of the terms agreed between Deval and Repinter, but otherwise completely incorporated the terms of Charterparty No. 1 into Charterparty No. 2.  ((See Semark Reply Decl., ¶5 and the fixture recap annexed as Exh. 2 thereto ("Otherwise as per Owners B-T-B Head C/P dtd April 13, 2006 other than logical alterations or unless already agreed in main terms….") ) ) Since the charters are, in fact, back-to-back, the owners under both charters are liable and Repinter can recover from Owner Deval under Charter No. 1 the damages it owes to BSC as (the disponent) owner under Charter No. 2.

## CONCLUSION

For all the foregoing reasons and those in the accompanying Reply Declaration of David M. Semark filed herewith, Defendants respectfully request that (1) Defendants be granted counter-security in the total amount of $1,421,786[15] (2) Plaintiff be specifically directed to provide Defendants with counter-security in the form of either a bond, bank guaranty, or letter of undertaking from Plaintiff's P&I Club, and (3) Plaintiff be enjoined from pursuing its claims against Defendants in the London arbitration until it has posted appropriate counter-security herein.[16]

Dated: New York, New York  
      July 23, 2007

KEANE & MARLOWE  
Attorneys for Defendants  
s/_____  
Mary Ann C. Marlowe (MM 0723)  
Christopher P. Keane (CK 4394)

197 Route 18 South Suite 3000  
East Brunswick, NJ 08816

---

[15] Defendants' request for counter-security has been reduced from $1,500,326 to $1,421,786 due to a slight overlap in the hire withheld by BSC from Repinter for the period April 26th to May 5th and the corresponding deduction of hire by Repinter from Plaintiff. Both Defendants and BSC contend that Deval's actions, 1) deprived BSC and Repinter of the use of the vessel between April 4th and BSC's termination of the charter on April 22nd, 2) justified BSC's termination of the Charter and withholding of corresponding hire and 3) released both from any obligation to pay for redelivery bunkers or the Suez Canal transit fees following the termination. (Semark Reply Decl. ¶¶ 37-42)

[16] See Daeshin Shipping Co. Ltd v. Meridian Bulk Carriers, Ltd., 2005 U.S. Dist. LEXIS 22049 (S.D.N.Y. 2005) at *11. (granting Defendants' request to enjoin Plaintiff from pursuing its claims against the Defendant in the London arbitration until counter-security posted based upon the language of Rule E(7) providing: "proceedings on an original claim must be stayed until this security is given unless the court directs otherwise.")