UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

DEVAL DENIZCILIK VE TICARET A.S.,

                          Plaintiff,                    **07 CIV 3397 (JGK)**

-against-                                               **ECF CASE**

REPINTER INTERNATIONAL SHIPPING
CO. S.A. and MIACHART CORPORATION
LLC.,

                          Defendants.

-------------------------------------------------------------x

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR COUNTER-SECURITY

                          KEANE & MARLOWE, LLP
                          Attorneys for Defendants
                          REPINTER INTERNATIONAL
                          SHIPPING CO. S.A. and
                          MIACHART CORPORATION LLC
                          197 Route 18 South Suite 3000
                          East Brunswick, New Jersey 08816
                          (732) 951-8300

Of Counsel:
Mary Ann C. Marlowe (MM-0723)
Christopher P. Keane (CPK-4394)

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES………..…….……………………………………………………ii

ARGUMENT……………………………………………......……………………………………1

POINT I.     DEFENDANTS HAVE SATISFIED ALL PREREQUISITES FOR A
             GRANT OF COUNTER-SECURITY PURSUANT TO RULE
             E(7)(a)[1]..........................................................................................................1

        A.   Both Repinter and Miachart are "Persons" Who Have Given Security"……..1

        B.   Guarantors Have the Right to Assert Counterclaims and Request Counter-
             Security……………………………………………………….…………....1

POINT II.    PLAINTIFF MISCHARACTERIZES DEFENDANTS' "FIRST
             COUNTERCLAIM" …………………….…………………………….…2

POINT III.   COUNTER-SECURITY FOR BSC'S UNPAID HIRE SHOULD BE
             GRANTED………………………………………………………........3

        A.   Privity between Plaintiff and Sub-Charterer Is Not A Prerequisite…..……...3

        B.   Counter-Security is Warranted Under English and New York Law…………4

POINT IV.    SECURITY FOR BSC'S CLAIM IS APPROPRIATE UNDER
             RULE E(7)………………………………………………………….....5

        A.   A Rule E(7) Analysis vs a Rule E(4)(f) Analysis..……..……………….……6

        B.   Defendants' Breach of Contract Counterclaims and Request for Counter-
             Security Should be Analyzed Under the Appropriate Standards Applicable to
             Rule E(7)………………………………………………………………...6

        C.   Defendants' Counterclaim is "Ripe" Even Under a Rule E(4)(f) "Ripeness"
             Standard …………….…………………………….………………………7

        D.   This Court Has the Discretion to Award Defendants Counter-Security in Any
             Event……………………………………………………………….…..9

        E.   Defendants' Counterclaims Are Well Supported………………….…...….9

CONCLUSION……………………………………………………………....………..…10

i

## TABLE OF AUTHORITIES

## FEDERAL CASES

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,
    460 F.3d 434 (2d Cir. 2006)................................................................6

Bottiglieri Di Na Vigazione v. Tradeline LLC,
    472 F. Supp. 2d 588 (SDNY 2007).......................................................6, 7

Daeshin Shipping Co., Ltd. v. Meridan Bulk Carriers, Ltd.,
    2006 WL. 3462120 (SDNY 2006)................................................. 1, 7-10

D.C.R. Trucking v. Aetna Cas. and Sur. Co., 2002 LEXIS 26308
 (E.D.N.Y. 2002)...............................................................................2

Dongbu Exp. Co., Ltd. v. Navios Corp.,
    944 F. Supp. 235 (SDNY 1996)...........................................................3

Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S,
    333 F.3d 383 (2d Cir. 2003)...............................................................3

Finecom Shipping Ltd. v. Multi Trade Enters. AG, 2005 LEXIS 25761, 2 (SDNY
    2005) ...........................................................................................9

Greenwich Marine, Inc. v. S.S. ALEXANDRA,
    339 F.2d 901 (2d Cir. 1965)...........................................................5, 6

In re Complaint of Kreta Shipping, S.A.,
    2000 WL. 33249253 (SDNY 2000)....................................................4

Jessica Howard Ltd. v. Norfolk Southern R.R. Co.,
    316 F.3d 165 (2d Cir. 2003)..............................................................3

Staronset Shipping Ltd. v. North Star Navigation Inc.,
    659 F. Supp. 189 (SDNY 1993)......................................................5, 6

Titan Navigation, Inc. v. Timsco, Inc.,
    808 F.2d 400 (5th Cir. 1987) ...........................................................6

Travelodge Hotels, Inc. v. SD Hospitality, Inc 2007 LEXIS 47971 (D.Minn.
    2007) ...........................................................................................2

Verton Navigation, Inc. v. Caribica Shipping Ltd., 1991 LEXIS 6722
 (SDNY 1991)..................................................................................2

**DOCKETED CASES**

Hibiscus Shipping, Ltd. v. Novel Commodities S.A.,
    No. 04 Civ. 2344, at 3-4 (SDNY 2004) ......................................................................9

**FEDERAL RULES**

Admiralty, Maritime Claims, Supplemental Rule B ………………………………..5, 7

Admiralty, Maritime Claims, Supplemental Rule E(4)(f) ………………………….5, 6, 7

Admiralty, Maritime Claims, Supplemental Rule E(7)(a) ……………………..1, 2, 6, 7, 9

**MISCELLANEOUS**

Robert J. Zapf, In Rem Procedures: A Sea Change Underway—Recent and
    Proposed Changes to the Admiralty Rules, 15 U.S.F. Mar. L.J. 77, 107 (2002-
    2003) ............................................................................................................................1

## ARGUMENT

### POINT I:  DEFENDANTS HAVE SATISFIED ALL PREREQUISITES FOR A GRANT OF COUNTER-SECURITY PURSUANT TO RULE E(7)(a) [1]

**A**.     **Both Repinter and Miachart are "Persons" Who Have "Given Security"**

Plaintiff's opposition brief was filed prior to the issuance of the Travelers bond which was issued and accepted on behalf of both defendants.  Plaintiff's brief acknowledges only the prior attachment of Miachart's assets, and suggests that counter-security should be denied because Repinter has not given security. Since both defendants have now given security, both have satisfied the first prerequisite of Rule E(7)(a).

Moreover, prior to the Rule's amendment in 2000, it required counter-security when "the *defendant or claimant*…has given security."  As of December 1, 2000, the Rule required countersecurity "when a *person* has given security"(emphasis added).[2]  Thus, Miachart qualifies as *either* a "defendant" under the old phrasing or a "person" under the new.  This is consistent with the Rule's strict construction. See Daeshin Shipping Co., Ltd. v. Meridan Bulk Carriers, Ltd., 2006 WL 3462120,*1 (SDNY 2006) (non-party assignee of plaintiff's claim need not post countersecurity since rule applies only to "plaintiffs"). Thus, under a plain reading of "person who has given security," Miachart clearly qualifies.

**B.     Guarantors Have the Right to Assert Counterclaims and Request Counter-Security**

---

[1] Rule E(7)(a) states as follows: When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given *must* give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise. (emphasis added)
[2] The change reflected a general move away from the use of the word "claimant," which was largely eliminated from the Supplemental Rules in the 2000 amendments. See Robert J. Zapf, In Rem Procedures: A Sea Change Underway—Recent and Proposed Changes to the Admiralty Rules, 15 U.S.F. Mar. L.J. 77, 107 (2002-2003).

Plaintiff's reliance upon Miachart's being a "mere[] Guarantor" with no counterclaims of its own is equally misplaced. (Opp. Brf. at 3-5)  A "person" who may give and request security under Rule E(7)(a) is not limited to a contractual partner.  Nor does one's guarantor status limit its ability to assert counterclaims or seek counter-security.  Quite to the contrary, a guarantor may assert any defense or raise *any counterclaims* available to its principal.  See D.C.R. Trucking v. Aetna Cas. and Sur. Co., 2002 LEXIS 26308, *14 (E.D.N.Y. 2002) (absence of privity did not preclude defendant-guarantor's counterclaim for indemnification).[3]  See also to the same effect, Travelodge Hotels, Inc. v. SD Hospitality, Inc 2007 LEXIS 47971 (D.Minn. 2007)

## POINT II:  PLAINTIFF MISCHARACTERIZES  DEFENDANTS' "FIRST COUNTERCLAIM"

It is axiomatic that claims and counterclaims arising out of a vessel charter are considered "arising out of the same transaction" for purposes of Rule E(7).  Verton Navigation, Inc. v. Caribica Shipping Ltd., 1991 LEXIS 6722 (SDNY 1991). Plaintiff's claims and Defendants' counterclaims all arise from Charter No. 1.  Point II of Plaintiff's brief does not contest this well-established principle, but is erroneously premised upon an incorrect identification of Defendants' "first counterclaim" as being Deval's refusal to accept the Defendants' tendered LOU.  (Opp. Brf. at 5-6).  Defendants' counterclaims begin at paragraph 30 of Defendants' Verified Answer and Counterclaims and are precisely quantified at paragraphs 37 of Defendants' Verified Answer and Counterclaims. [4]  Accordingly, none of Plaintiff's arguments regarding Defendants' first counterclaim need be considered and, as correctly stated by Plaintiff, "The Court need go no further."

---

[3] This is consistent with the absence of a guarantor's need for privity under English law.  See paragraph three of the July 19, 2007 Reply Declaration of David Martin Semark ("Semark Reply Decl.") and Exhibit 1 thereto.

[4] (a) $556,127  in hire withheld from Charterers by Sub-Charterers, BSC, by reason of Owners' breaches of Charter No. 1; (b) $390,322 to cover Charterers' exposure BSC's claim as a result of Owners'/Master's actions.

### POINT III:  COUNTER-SECURITY FOR BSC'S UNPAID HIRE SHOULD BE GRANTED.

**A.**          <u>Privity between Plaintiff and Sub-Charterer Is Not A Prerequisite</u>

Plaintiff argues, without citing any support, that because it is not in privity with BSC, Defendants' counterclaim for the unpaid charter hire withheld by subcharterer is "entirely misdirected".  This contention lacks any merit.

With respect to the sub-charter, the $556,127 in unpaid hire constitutes "contract damages" and the $390,322 constitutes "consequential damages."  <u>See</u> <u>Jessica Howard Ltd. v. Norfolk Southern R.R. Co.</u>, 316 F.3d 165, 169-70 (2d Cir. 2003).  However, with respect to the head-charter, both are consequential damages.  As discussed below, the unpaid hire is a consequential damage stemming from Plaintiff's breach of the head-charter which can be recovered by Defendants despite the fact that Deval is not a signatory to the sub-charter.

In <u>Dongbu Exp. Co., Ltd. v. Navios Corp.</u>, 944 F.Supp. 235 (SDNY, 1996), a charterer sought security arising from an owner's termination of the charter. The owner moved for a reduction of the attachment and for countersecurity. The court granted both as well as security to the charterer for its potential liability to the subcharterers due to the owner's breach.

Plaintiff's attempted distinction between the counterclaims for unpaid charter hire and for Defendants' exposure to BSC's claims is also unprecedented.  Courts generally order full indemnification for liability to a third party caused by a breach by one of the parties before the court.  <u>See</u> <u>Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S</u>, 333 F.3d 383 (2d Cir. 2003)(cargo owner ordered to indemnify charterer for full amount of the latter's liability to owner, where charterer's breach against owner caused by cargo owner's breach against charterer.)  Further, indemnity in the maritime context is also an equitable concept, presumably

3

immune from such distinctions as Deval attempts to draw. See In re Complaint of Kreta Shipping, S.A. 2000 WL 33249253 (SDNY 2000)("[i]n the absence of any contractual relationship, the obligation to indemnify may be imposed as a matter of equity ").

As noted above, Defendants seek consequential damages arising from claims relating to Plaintiff's breach of the head charter. Given that Defendants' damages are consequential and stem from Plaintiff's breach of the head charter, Defendants can recover the unpaid hire under the subcharter and, it follows, counter-security for same.

## B.    Counter-Security is Warranted Under English and New York Law

Plaintiff argues that Defendants' counterclaim for BSC's unpaid hire is allegedly "frivolous" in that: (1) no evidence allegedly exists that BSC legitimately deducted hire pursuant to a charter party clause (Opp. Br. at 6); (2) no connection allegedly exists between Deval's breaches and BSC's withholding hire.  (Opp. Br. at 7); (3) Defendants have allegedly never claimed the vessel was off-hire (id.); and (4) Deval allegedly cannot be liable to Defendants under English law. (Id.) All of the above are factually and/or legally incorrect.

 (1) Clause 34 of both Charterparties provides that:  "in the event of loss of time either in port or at sea…by any refusal of the Master or crew to perform their duties, the hire shall be suspended…" [5]  Moreover, under English law, which governs herein, a charterer has a right to withhold hire where the shipowner breach has deprived him of the use of the ship (the so-called right of "equitable set-off")( Semark Reply Decl., ¶ 2 and Exh. 17).  Thus, not only is there a provision in the charterparties which permits BSC to withhold hire, there is a general right to do so under English law.

---

[5] See Semark Reply Decl., ¶29; See also id. at ¶ 7 noting that the head and subcharterparties are "back-to-back" in all material respects, including the redelivery dates and redelivery places.

(2) In its Complaint, BSC refers to "breach of stevedore damage provisions contained in the charter party and failure to make significant repairs" which deprived BSC of its use of the Vessel.(Argyrakis Decl. Exh. 3, ¶¶ 7-9)  Defendants, in turn, allege it was Plaintiff's responsibility to make the repairs and that the Master's conduct in obstructing the repair efforts constituted a repudiation of the charter which entitled BSC to withhold hire.  (Semark Reply Decl., ¶ 16(j)). BSC's solicitors concur with Defendants, noting that Deval's actions caused Repinter's breach under Charter No. 2.[6]

(3) Defendants have, in fact, claimed off hire damages between April 4th and May 5th when neither BSC nor Repinter had use of the vessel.  Repinter should recover hire already paid to Deval, which then can be credited against the claim for hire rightfully withheld by BSC under the sub-charter as a result of Deval's breaches under Charter No. 1. [7]

(4)  Deval's unsupported claim that it can not be liable to Defendants for the unpaid hire under English law (Opp. Br. at 7) should be flatly rejected in light of the "equitable set-off" doctrine discussed in no. (1) above and Exhibit 17 to the Semark Reply Declaration.

### POINT IV:  <u>SECURITY FOR BSC'S CLAIM IS APPROPRIATE UNDER RULE E (7)</u>

In Point IV Plaintiff argues that Defendants' second counterclaim is an "unripe indemnity claim."   Plaintiff not only erroneously characterizes Defendants' claim, it erroneously invokes a Rule E(4)(f) vacatur analysis.  Neither decision relied upon by Plaintiff[8] in this regard concerned counter-security.  Staronset concerned the propriety of the attachment obtained by Plaintiff shipowner under Rule B.  Similarly, Greenwich Marine addressed the propriety of an arrested

---

[6]  Semark Reply Decl., ¶ 34 and April 24, 2007 letter from BSC's solicitors to Defendant's solicitors attached as Exh. 18.

[7] Defendants' request for counter-security has been reduced from $1,500,326 to $1,421,786 for the reasons stated in the Semark Reply Declaration at ¶¶ 37-42

[8] See Opp. Brf. at 8-9 citing Greenwich Marine, Inc. v. S.S. ALEXANDRA, 339 F.2d 901, 908 (2d Cir. 1965) and Staronset Shipping Ltd. v. North Star Navigation Inc., 659 F. Supp. 189, 190 (SDNY Nov. 9, 1993).

vessel by the charterer who sought to secure a loss sustained by a subcharterer. Plaintiff's inappropriate focus upon a Rule E4(f) analysis underscores its inappropriate application herein.[9]

## A.    A Rule E(7) Analysis vs a Rule E(4)(f) Analysis

A thorough discussion of a Rule E(7) analysis for counter-security is set forth in Titan Navigation, Inc. v. Timsco, Inc., 808 F.2d 400 (5th Cir. 1987), wherein the Fifth Circuit stated that, given the "straightforward"nature of the rule's language and its manifest intent, absent "for cause shown," counter-security should be granted. Id. at 403. Plaintiffs herein have not demonstrated "for cause shown" which includes enforcing one's privileged position (such as in the case of seamen), showing financial inability, or demonstrating a frivolous counterclaim. Id. at 403-4. The nature and purpose of a Rule E(4)(f) vacatur analyses employed in attachment and arrest cases, such as those cited by Plaintiff herein, is quite different. Under Rule E(4)(f), a plaintiff must demonstrate a valid ("ripe") prima facie admiralty claim against the defendant, absent which a vacatur must be granted. See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006).

## B.    Defendants' Breach of Contract Counterclaims and Request for Counter-Security Should be Analyzed Under the Appropriate Standards Applicable to Rule E(7)

Defendants' breach of contract counterclaims[10] are based upon Plaintiff's breach of provisions 8 and 32 of Charter No.1. Courts distinguish breach of contract claims from indemnity claims by examining the allegations in the complaint. In Bottiglieri Di Na Vigazione v. Tradeline LLC, 472 F. Supp. 2d 588, 590 (SDNY 2007), the cou rt determined the claim was

---

[9] Correctly anticipating Defendants' challenge to these decisions, plaintiff included a footnote string citation to three Rule E(7) counter-security decisions at page 9, n.8 of its brief. The footnote citation adds no support to Plaintiff's misplaced reliance upon Staronset Shipping and Greenwich Marine and only further supports Defendants' request for countersecurity herein.

[10] See Exh. 5 to the May 24, 2007 Marlowe Declaration at ¶¶ 30-37

an indemnity claim because, unlike Defendants' counterclaims herein, that plaintiff did "not allege that any act by defendant increased plaintiff's potential liability" to a third party. Id. at 591.

The distinction between a Rule E(4)(f) vacatur analysis and a Rule E(7) analysis for counter-security is even more clearly seen in Daeshin Shipping, supra, wherein this court granted both defendant's motion for counter-security and its motion to reduce the security initially attached by the plaintiff. For the Rule E(4)(f) vacatur motion, the court examined whether the claim against the plaintiff was ripe (id at *8); for the Rule E(7) counter-security motion, the court examined whether the claims were colorable and arose from the same transaction. Id. at *9. Accordingly, the issue of "ripeness" is an inappropriate consideration for an evaluation of Defendant's breach of contract counterclaims and request for counter-security.

## C.    Defendants' Counterclaim is "Ripe" Even Under a Rule E 4(f) "Ripeness"Standard

Even if ripeness were a relevant consideration, Defendants' counterclaim must be considered "ripe." Basic contract law dictates that in breach of contract claims, "[t]he cause of action will date from the date of breach." Bottiglieri, 472 F. Supp. 2d at 590. Deval's breaches of Charter No. 1 accrued well before the New York Rule B attachment proceedings. Defendants' counterclaims are thus ripe even if a Rule E(4)(f) analysis were applicable.

Finally, even if Defendants' second counterclaim were an indemnity claim, it would be ripe. Indemnity claims are ripe when the claimant *offers evidence of a suit or a claim* against it by a third party. See Daeshin, 2005 LEXIS 22409 at *7-8. In its Rule E(4)(f) motion, the Daeshin defendant argued that the plaintiff's indemnity claim was premature because no lawsuit had been initiated against the plaintiff. Id. at *7 The court deemed the claim ripe, however, since arbitrators had been appointed and correspondence circulated asserting specific damage claims.

7

<u>Id</u>. Moreover, the court found that "it is not unduly speculative to assume that the physical damage claims are being asserted down the chain of charter parties and that plaintiff has a reasonable belief that it faces potential liability." <u>Id</u>. The fact that no lawsuit had been initiated against the plaintiff was not controlling. <u>Id</u>.

The Defendants' second counterclaim herein is ripe for the same reasons.  First, when BSC sued Defendants in New York, it put both parties on notice that BSC "will soon" commence London Arbitration proceedings against [] Repinter in accordance with the terms of the contract."[11]  Second, the "London Arbitration proceedings have been commenced under all three fixtures [charters]."  Deval, Repinter, and BSC have now appointed arbitrators down the chartering chain (Semark Reply Decl. at ¶¶ 8(a)-(c) and Exhs. 3-4). The parties are, in fact, waiting for Plaintiff Deval herein to present its claim in the "head reference" <u>Id</u>. at ¶ 11.  When Plaintiff does so, "the factual allegations will be passed down the chartering chain and the contrary case passed upwards" as per the Tribunal procedural directions.

Moreover, no negative inference should be drawn about the viability of Defendants' counterclaims because Defendants had not, as of June 29th, asserted such counterclaims or commenced arbitration proceedings against BSC in the arbitration. (Semark Reply Decl. ¶¶10, 13).  Deval's failure to have appointed an arbitrator or to have served any claim submissions as of that date has deterred the progress in London upon which Plaintiff now disingenuously attempts to capitalize by characterizing Defendants' second counterclaim as "unripe."[12]  This will be done "down the chain" once Deval has served its claims submissions and/or evidence in

---

[11] <u>See</u> para. 12 of BSC's Verified Complaint attached to the June 29, 2007 Declaration of G. Arghyrakis', Exh. 2.

[12] Deval's nominated arbitrator was successfully challenged as being a barrister and not being a "commercial man." Plaintiff has made no attempt to nominate another arbitrator, so no panel has been constituted and no submissions have been served.

the head-reference  (Semark Reply Decl., ¶13)

**D.    This Court Has the Discretion To Award Defendants Counter-Security in Any <u>Event</u>**

Even if this Court finds that Defendants' second counterclaim is an "unripe indemnity claim," the trial court possesses broad discretion in ordering countersecurity. <u>Finecom Shipping Ltd. v. Multi Trade Enters. AG</u>, 2005 LEXIS 25761, *2 (SDNY 2005).  For example, a claim letter has been deemed sufficient to sustain an attachment of a defendant's assets even though a third party had yet to commence an action against the plaintiff. <u>Hibiscus Shipping, Ltd. v. Novel Commodities S.A.</u>, No. 04 Civ. 2344, at 3-4 (SDNY 2004).  Plaintiff is now fully secured and the London arbitrations have commenced.  Unless this Court deems Defendants' counterclaims frivolous, their request for counter-security should be granted as a denial would undermine the very goal of Rule E(7) to put the parties on an equal footing with respect to security.

**E.    <u>Defendants' Counterclaims Are Well Supported</u>**

While the presumptive grant of counter-security is conditioned upon a colorable counterclaim, it is not the function of this Court to determine the facts or interpret the charter party.  That is the function of the London arbitrators.  This Court need only determine whether Defendants' counterclaims are frivolous. <u>Daeshin,</u> 2005 LEXIS 22409 at *9.

It cannot be genuinely denied that Defendants' counterclaims herein are colorable, to say the least.  Plaintiff's assertion to the contrary is not supported by the facts or the law. ( Opp. Br. at 8).  Mr. Arghyrakis suggests (¶8) that Defendants are liable for the stevedore damage under Charter No. 2 because the BSC Complaint places responsibility upon Repinter to repair the damage to the vessel.  However, Mr. Arghyrakis fails to note that, given the Owner/Charterer relationship of Repinter to BSC in Charter No. 2, Repinter's liability therein is passed up to

Deval as the Owner under Charter No. 1 in a "back to back" fixture. Thus, if Repinter, as disponent owner under Charter No. 2, is found liable for the damage, then Repinter can, in turn, recover from Deval the damages owed to BSC arising from Deval's breach under the back-to-back terms under Charter No. 1.

Nor is there any genuine issue as to whether the charters are back-to-back. The November 15, 2006 fixture recap incorporated the terms of Charter No. 1 into Charter No. 2 with a few amendments. (Semark Reply Decl., ¶5 and Exh. 2 thereto ("Otherwise as per Owners B-T-B Head C/P dtd 4/13/06 other than logical alterations or unless already agreed in main terms…." ) ) Since the charters are back-to-back, the owners under both would be liable and Repinter as the disponent owner under Charter No. 2, can recover from Owner Deval under Charter No. 1.

## CONCLUSION

For all the foregoing reasons and those in the Reply Declaration of David M. Semark filed herewith, Defendants respectfully request that (1) Defendants be granted counter-security in the total amount of $1,421,786 (2) Plaintiff be specifically directed to provide Defendants with counter-security in the form of either a bond, bank guaranty, or letter of undertaking from Plaintiff's P&I Club, and (3) Plaintiff be enjoined from pursuing its claims against Defendants in the London arbitration until it has posted appropriate counter-security herein.[13]

Dated:  New York, New York          KEANE & MARLOWE
        July 25, 2007               Attorney for Defendants
                                    s/_____
                                    Mary Ann C. Marlowe (MM 0723)
                                    197 Route 18 South Suite 3000
                                    East Brunswick, NJ 08816

---

[13] See Daeshin Shipping Co. Ltd v. Meridian Bulk Carriers, Ltd., 2005  LEXIS 22049 (SDNY 2005) at *11 granting Defendants' request to enjoin Plainntiff from pursuing its claims against the Defendant in the London arbitration until counter-security posted based upon the language of Rule E(7).